## STANDARD TEXTILE PRODUCTS CO v PERTCHI

Ohio Appeals, 7th Dist, Mahoning Co

No 2300. Decided Oct 23, 1936

Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

P. B. Betras, Youngstown, and A. P. Hottenstein, Youngstown, for defendant in error.

## OPINION

By CARTER, J.

This case is in this court on appeal on questions of law. The appellee, plaintiff below, brought her action in the Court of Common Pleas of Mahoning County, against the appellant, defendant below, seeking damages for a claimed breach of contract, and in her amended petition she alleges that the defendant is a corporation organized and existing under and by virtue of the laws of the State of Ohio; that on or about February 3rd, 1917 and for some time prior thereto, she was in the employ of the Standard Oil Cloth Company, as a factory helper, the name of the company subsequent thereto having been changed to the Standard Textile Products Company; that on this day, while in the performance of the duties which she owed the Standard Oil Cloth Company, she was caused to sustain certain personal injuries; that on or about November 24th, 1917, she entered into an oral contract or settlement or compromise with the Standard Oil Cloth Company, for the injuries she sustained; that one of the conditions or terms of the contract provided that plaintiff was to receive employment by the Standard Oil Cloth Company for the rest and balance of her natural life, and that in no event was she to be employed by defendant for less than three days every week of this period, at the prevailing prices of labor, to-wit, about

three dollars per day, and she further avers that pursuant to this contract she was employed by the Standard Oil Cloth Company, defendant, from the hereinbefore mentioned date of the agreement until some time during the month of August, 1932; that during the said latter month defendant failed to perform this contract, on its part to be performed, in that it refused to further employ her, and during this month discharged her from said employment. She further alleges that she performed all and singular the conditions and terms of the contract on her part to be performed; that at the time of defendant's refusal to perform the contract, or at the time it discharged her from its employment, she was forty-three years of age, and her expectancy of life was about twenty-five years; that by reason of defendant's discharging her from this employment she has been damages in the sum of $11,700, for which she prays judgment.

To this amended petition the defendant filed the following answer: It admits that it is an Ohio corporation formerly known as the Standard Oil Cloth Company; admits that the plaintiff was on and before February 3rd, 1917, an employe of the Standard Oil Cloth Company; admits that while so employed she sustained certain personal injuries on or about the 3rd day of February, 1917, and admits that plaintiff had been at times employed by the Standard Oil Cloth Company and defendant, and for its first defense it denies each and every allegation in plaintiff's petition contained save and except those herein expressly admitted to be true, and for a second defense defendant alleges that plaintiff, on the 24th day of November, 1917, filed an action in this court, being case No. 38936, upon the dockets herewith, wherein she sought damages for the injuries described in the petition herein; that she recovered judgment in said action against the Standard Oil Cloth Company in the sum of $1440.00, together with her costs therein expended; that the judgment was paid by the clerk of the court, and that said judgment and the satisfaction thereof constitute a bar to plaintiff's claim, as set forth in the petition herein, and prays that the petition of the plaintiff be dismissed.

To this answer a reply was filed by the plaintiff, wherein she admits that she received the sum of $1440.00, but expressly denies that this was in full satisfaction of her claim against the Standard Oil Cloth Company, now known as the Standard Textile Products Company, and further denies that said judgment is a bar to the claims set forth in the petition.

The cause came on for trial to the court and jury, resulting in a verdict in favor of the plaintiff in the amount of five thousand dollars. Motion for new trial filed, overruled and judgment rendered on the verdict, and appeal is prosecuted to this court on questions of law.

Eighteen errors are assigned in appellant's petition in error. Due to the view this court entertains of this case, it becomes unnecessary to determine each of these assigned errors, but we will confine ourselves to but one, which is that the verdict and judgment are contrary to law. There is little, if any, dispute as to the operative facts save and except a claimed letter in question agreeing to give the plaintiff as a part of the settlement a life time job. This letter was not produced at the trial, the claim being that it had been lost.

The evidence discloses that the plaintiff, subsequent to her injury in 1917, employed counsel; that her attorney, Charles Nadler, wrote to the defendant and in due course heard from Richard Wilson, attorney of this city, that he was ready to discuss the case. Mr. Wilson was the attorney for the Royal Indemnity Company, which insured the defendant against liability for injuries sustained by its employee. Various conferences were had and letters exchanged between the attorneys, Charles Nadler and Richard Wilson, and Charles Rich, who was an adjuster for the insurance company, with a view toward settlement of the case. On November 22nd, 1917, Mr. Rich wrote to Mr. Nadler and referred therein to Mr. Nadler's acceptance of the insurance company's proposition of $1440.00, plus medical expenses of $191.00, and suggested that Mr. Nadler draw the necessary petition and that judgment would be confessed in the sum of $1440.00, and that a release would be prepared. This letter is as follows:

"Nov. 22, 1917.

Chas. E. Nadler,
Counsellor at Law,
Youngstown, Ohio.
Re:—K. Pershi v Standard Oil C. Co.,
          Our claim No. 6039
Dear Sir:
"Your favor of the 21st at hand and note you accept our proposition of $1440.00 in the settlement of this case providing we pay the medical bills of St. Elizabeth's Hospital in the sum of $86.00; Dr. J. K.

Hamilton's bill of $85.00 and Drs. Hill and Thomas bill of $20.00. We will pay these bills in addition to the sum of $1440.00, which amounts will be the consideration for the satisfaction of the consent judgment. The total amount, however, paid, must show as the consideration for the release which we will take from Katie Pershi.

Therefore suggest that you draw up the necessary papers; file your petition and I will waive service of summons and confess judgment in the aforesaid sum on behalf of the defendant. In drawing your petition I might suggest that it is unnecessary to state that the plaintiff elects to sue at common law for the reason that the mere filing of the petition is in itself an election and a brief petition reciting the facts will undoubtedly be sufficient in the premises. Draft will be forthcoming at any time to suit your pleasure.

It might be well to have Wilson & Wilson look after our end in this proposition, and I will instruct them to represent us in this proceeding.

Yours truly,

Adjuster."

On November 24th the plaintiff's petition was filed in the Court of Common Pleas, an answer was filed on behalf of the defendant, and an entry of settlement without record at the defendant's costs was made by the court. However, on November 28th, the former entry of settlement was stricken, jury waived, cause tried to the court upon the pleadings and the evidence, and on the issues joined by the pleadings the court found the defendant indebted to the plaintiff in the sum of $1440.00, and rendered judgment on that sum, plus costs. On the same day, November 28th, the plaintiff executed her written release and the insurance company paid the amount of the judgment, to-wit, $1440.00, to the clerk of the Common Pleas Court, and the clerk paid $1440.00 to the plaintiff.

This written release is in words and figures as follows:

"RELEASE AND SETTLEMENT"

"This release and settlement made and entered into this 28th day of November, 1917, between the Standard Oil Cloth Company, party of the first part, and Katie Pershi, party of the second part,

WITNESSETH, That

WHEREAS, on or about the 3rd day of February, A.D., 1917, at about eleven (11:00) A. M. a certain accident occurred wherein the party of the second part, in some manner caught her right hand and arm in what is known as a roller machine of the Standard Oil Cloth Company, bruising, contusing and crushing partly her right hand and arm, and

WHEREAS, the said party of the second part having brought suit being No. 38936, in the Common Pleas Court of Mahoning County, Ohio, in which she asked damages in the amount of $1631.00, and said case has been marked 'Jury waived, trial to court, judgment for plaintiff for $1440.00 and costs.'

WHEREAS, Party of the first part and party of the second part, are desirous of settling all claims arising out of the aforesaid accident,

THEREFORE, IT IS AGREED AND UNDERSTOOD, that for and in consideration of the sum of $1440.00 received through the Common Pleas Court, receipt of which is hereby acknowledged, plus $88.00 for St. Elizabeth's Hospital, and $85.00 bill of Dr. J. K. Hamilton, and $20.00 bill of Drs. Hill and Thomas, receipt of which is hereby acknowledged, I, Katie Pershi, do hereby forever release, relieve and discharge the said party of the first part, The Standard Oil Cloth Company, Royal Indemnity Company and any and all other corporations, partnerships and individuals in Mahoning and Trumbull Counties, of any and all claims, demands, actions or causes of action, which have arisen or may arise, or be realized in the future in any conceivable manner arising out of the aforesaid accident, whether for injuries, pain and suffering, lost earning capacity, lost wages, doctor bills, or for any other conceivable reason.

IN WITNESS WHEREOF, I hereunto set my hand at Youngstown, Ohio, this 28th day of November A.D., 1917.

WITNESSES: C. E. Nadler

Richard B. Wilson.

(Signed) Katie Pertrshi."

It will be observed that no mention is made in the court proceedings nor in the release executed bearing the same date as the judgment that in addition thereto she was to have a life job. Plaintiff, however, contended on the trial of the case that at the time of settlement she received a letter which, in substance, stated that she would be given lifetime employment by the defendant, and there was some evidence introduced in the trial of the case bearing out this contention; that is, oral testimony was admitted in an attempt to establish the contents of the lost letter.

One of the witnesses testified to the effect that the letter in question was on stationery of the Standard Oil Cloth Company and bore the name of Mr. Hunsicker, as Vice-president. He further testified that he did not see Mr. Hunsicker sign the letter, and that was the only time he ever saw Mr. Hunsicker's signature, and testified that the letter was in longhand. Mr. Nadler, counsel for the plaintiff at the time, further testified that at the time of settlement this letter was given to him and was a part of the settlement of the case, thereby contradicting the record judgment, and also the release, which provided that the money settlement was in full for all damages she had received, the wording of the release being that she does hereby release and discharge the said party of the first part, the Standard Oil Cloth Company, the Royal Indemnity Company and all other corporations, partnerships and individuals in Mahoning and Trumbulll Counties, of any and all claims, demands,, actions or causes of action, which have arisen or which may arise, or be realized in the future in any conceivable manner arising out of the aforesaid accident, whether for injuries, pain and suffering, lost earning capacity, lost wages, doctor bills or for any other conceivable reason.

The evidence discloses that there is a decided conflict in the testimony as to whether such an agreement was ever entered into by these parties. Richard Wilson, attorney for the insurance company, testified to the contrary. Mr. Rich, the adjuster, also testified that there was no such an agreement given to the plaintiff at the time. Mr. Hunsicker testified that no such letter was written by him, and he knew of none such. However, we do not think it necessary to pass on the question of the weight of the evidence in this regard except to indicate that there appears to be a serious dispute as to whether or not such a letter, providing a life job to the plaintiff, was a part of the settlement.

See **Vol. 23, Ohio Jurisprudence, page 821,** under the subject "Conclusiveness of Judgments," wherein the author states:

"In the absence of fraud, collusion or mistake at least, a judgment upon the merits rendered by a court of competent jurisdiction is a final determination or adjudication of the claims and rights of the parties, of the fact and amount of indebtedness and remedies of the parties of the issues or material facts or matters necessarily properly or directly in issue, and under proper circumstances of questions which might have been litigated therein, but not of those matters which could not have been adjudicated therein, and is conclusive and binding as between the parties and privies."

Innumerable cases are cited by this authority bearing out this statement.

In the case of **Cleveland, Cincinnati, Chicago & St. Louis Ry. Company v Green, 128 Oh St, 512,** the second paragraph of the syllabus reads as follows:

"The oral agreement for a life time job was closely connected with the principal transaction; it related to the compensation that the plaintiff was to receive and was the subject considered in the negotiations for settlement and embodied in the release contract. Such oral agreement did not relate to a subject matter separate and distinct from that embraced in the written release, and was therefore not a collateral transaction."

This case involved the question of a life job. In other words, in the case at bar the claimed promise of the company was not a collateral transaction, but was closely connected with the principal transaction. It is the conclusion of this court that this judgment can not be ignored or contradicted in the manner sought in this proceeding. No fraud or undue advantage is claimed. Plaintiff was at the time of settlement represented by counsel. This judgment is binding and conclusive as against the plaintiff.

There is another matter worthy of consideration, and that is the plaintiff, in order to maintain her claim for a life time job, must establish that the one executing such an unusual agreement had power and authority to do so. There is evidence in the record that Mr. Hunsicker, whom it is claimed signed this letter, was General Manager and Vice-President of the company at the time of the settlement. This is not an ordinary contract. However, there is not one word of evidence in this record that Mr. Hunsicker had any authority to enter into any such an unusual contract. In other words, the evidence is to the effect that he had no such authority. Mr. Hunsicker, the Vice-President and General Manager, resided in New York at the time of the settlement. On page 278 of the record the following questions were propounded to Mr. Hunsicker and the answers thereto given:

"Q. By whom were your duties and authorities fixed?

A. By the board of directors.

Q. Had you been given authority to employ anyone for life?

A. No.

Q. Did you ever employ anyone for the Standard Oil Cloth Company for life?

A. No."

We are unable to discover any testimony in the record wherein Mr. Hunsicker was given authority to enter into any such a contract. In fact he testified that he had never entered into such a contract with anyone during his service with the company. This is not a contract arising in the ordinary course of the business of the corporation.

In the case of **Bryant Heater & Mfg. Co. v Kidd,** decided by the Court of Appeals of the Eighth District, found in **2 Abs 216,** the first paragraph of the syllabus is as follows:

"President and general manager can not bind corporations by contract of employment where by-laws provide that contracts must be signed by president and secretary."

This is a case in which the president and general manager hired a stenographer for a period of two years, and the court in the course of its opinion used the following language:

"The general manager has the power to enter into contract of employment with stenographers and clerks, but it can not be contended that it is necessary to bind the corporation with a contract of employment for two years in order to engage a stenographer. *Persons of ordinary prudence would be aware of that fact and should therefore be on their guard and make inquiry into the authority."*

There is no evidence in the record that it was customary for the Vice-President and General Manager to enter into such unusual and extraordinary contracts as the one at bar.

It is claimed that the evidence discloses that the plaintiff had worked for this company almost continuously since receiving her injuries in 1917, and that such constitutes a ratification of the contract claimed. It must be borne in mind that in order that there be an effective ratification, such must be with full knowledge on the part of the company of the terms of the contract. There was no substantial evidence in this record that this company permitted the plaintiff to work under the claimed contract with full knowledge thereof. The burden of proof is upon the plaintiff to establish these material issues. In this she has failed. Motion was made by the defendant for directed verdict at the close of plaintiff's evidence, and also at the close of all the evidence. These motions were overruled and exceptions noted. In this we think the court erred. Such being the case, the judgment of the Court of Common Pleas is reversed, and proceeding to render the judgment that the trial court should have rendered, final judgment is rendered in this court for the appellant.

ROBERTS and NICHOLS, JJ, concur.