## LITCHFIELD v STANDARD OIL CO. OF OHIO

Common Pleas Court, Hamilton Co.

No. A-69548. Decided Nov. 3, 1939

John P. Strother, Cincinnnati, for plaintiff.

McAfee, Grossman, Hanning & Newcomer, Cleveland, and Clarence M. Smith, Cincinnati, for defendant.

## OPINION

By BELL, J.

This case is before the court at this time on a motion made by the defendant at the conclusion of the plaintiff's case to instruct a verdict in favor of the defendant.

In considering such a motion the court starts with the proposition that the plaintiff is entitled to receive the most favorable construction possible to be placed upon his evidence in determining whether he is entitled to have his case submitted to the jury, and, that the court is never warranted under the law of Ohio in directing a verdict against a plaintiff at the conclusion of his evidence unless the court can say that in his opinion reasonable minds could not differ upon the conclusion to be reached.

With those propositions in mind the court is going to briefly review the evidence presented in this case.

Because of the conflict in the testimony as to who was the employer of the plaintiff at the time of his injury, because of the fact that this jury could conclude that the Standard Oil Company of Ohio was his employer on the 28th day of November, 1932, the court places that construction upon his evidence that on November 28, 1932, the plaintiff was an employee of The Standard Oil Company of Ohio. On that day he was severely burned by gasoline or benzol, and after receiving those injuries he was taken first to the General Hospital, and later to Holmes Hospital.

The evidence discloses that some time in December, between the 10th and 15th, Mr. Caldwell, being an assistant division manager of The Standard Oil Company, called upon the plaintiff. At that time he told the plaintiff that for the duration of his confinement, because of the burns, and his inability to work, The Standard Oil Company of Ohio would pay his wages, which amounted to $225 per month, and that he, the plaintiff, was to turn over to The Standard Oil Company of Ohio, such sums of money as he received from the Industrial Commission of Ohio by virtue of his claim of injury in the course of his employment.

The evidence further discloses that on December 1, 1932, The Standard Oil Company of Ohio made a general cut in the wages of its employees, in the sum of ten per cent, and that the plaintiff received the $225 salary minus the cut during the time that he was incapacitated from work.

The plaintiff's evidence is to the effect that on the visit of Mr. Caldwell to the hospital he told the plaintiff that he had nothing to worry about, that his wages would be paid during his incapacity, and that he would be given a job for life when he was able to return to work.

About April 1, 1933, the plaintiff returned to work, but prior thereto his testimony shows that he turned over the checks from the Industrial Commission to a man by the name of Weber, whom the evidence discloses occupied some position in The Standard Oil Company set up subordinate to Mr. Caldwell, and that various times Mr. Weber also made the statement to the plaintiff that he, plaintiff, would have employment for the term of his natural life.

On April 1st the plaintiff went back to work for The Standard Oil Company. Because of his inability, by reason of the burns, to resume the particular occupation and position which he held prior to the accident, he was given other employment, and remained in the service of The Standard Oil Company in various capacities from April 1, 1933, to January 1, 1939, at which time, according to the evidence, this same Mr. Caldwell, who had been promoted from

assistant division manager to division manager, notified plaintiff that his services were no longer required, and plaintiff's evidence is to the effect that when he asked Mr. Caldwell about the life employment, the latter said he was sorry, but that the orders had come from Cleveland to dismiss him from the service, and that if he wanted to do anything about the matter to go see Mr. Clarence M. Smith, whom the evidence discloses the plaintiff knew to have been Mr. Caldwell's attorney when he was president of a corporation known first under the name of Caldwell & Taylor, Incorporated, and later under the name of The Caldwell & Taylor Corporation; that he did not go to see Mr. Smith, but employed other counsel of his own choosing, and later brought this action for breach of contract.

His claim in the petition is that he has an expectancy of life of twenty-seven years, and he claims to have been damaged in the sum of sixty-odd thousand dollars.

This in my judgment sufficiently states evidence for the purpose of considering and deciding the motion before the court.

In passing upon this motion at this time, the court desires to say that in every case where there are questions of fact to be determined, the court has a strong preference for submitting those facts to the jury, and letting the jury determine the facts. But where, under the law, it becomes the duty of the court to arrest the case from the jury and direct a verdict in favor of a defendant, even though that duty be unpleasant the court can not shirk that duty.

The basis of the claim of the defendant that it is entitled to an instructed verdict in this case is that the plaintiff has wholly failed to prove that the Mr. Caldwell mentioned had any authority, either express or implied, from his position as assistant or as division manager, to enter into any such contract with the plaintiff, and that the burden being upon the plaintiff to establish such authority, that the defendant is entitled to a verdict.

A contract for employment for life is not an ordinary contract. It is not governed by the same rules with regard to its enforcement, nor is it governed by the same rules with reference to authority to enter into the contract.

There are several cases that have been called to the attention of the court in which, as a part of the consideration for a settlement for injuries, agents of corporations have attempted to enter into contracts for life employment, and even in those cases the courts have uniformly held that unless there was express authority by the person who attempted to bind the corporation, the injured party could not prevail.

In this case this claimed contract for life employment was no part of any settlement for any claim for damages. It is true that the plaintiff had been severely injured. Under the law of the state of Ohio, and under the facts as proven by this plaintiff, his claim was presented to the Industrial Commission of Ohio for an award for his injuries, and an award for permanent total disability, permanent partial disability, or temporary total disability as the case may have been; so that when Mr. Caldwell had this conversation with the plaintiff he was not settling any liability of the Standard Oil Company to the plaintiff by reason of his injuries.

As I read the cases, the ones in Ohio are in conformity with the general rule, and that where it is claimed a contract for life employment was made, the burden is upon the plaintiff to prove the authority of the person making the contract. Some of the courts go so far as to say that the only way in which such authority can be proven is to show a resolution by a board of directors duly passed, and that the officer entering into the contract acted under that resolution. That pronouncement is made by the New York Court of Appeals, the court of last resort in New York state, in which the court uses this language, the case being that of William Heheman v E. M.

Roll Company, Incorporated, reported in 261 N. Y., page 229:

"1. A contract of employment for life, if authorized by a corporation and based on an adequate consideration, would ordinarily be sustained.

"2. The president or other executive officer of such corporation has no authority as such to make such a contract even under a general power to appoint, remove and fix compensation of employees. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power, actually or impliedly vested in the corporation itself, must be found to justify such a hiring.

"3. In an action to recover damages for alleged wrongful discharge of plaintiff from the employ of defendant, a corporation, where the complaint does not suggest that its board of trustees ever authorized or ratified an alleged contract of employment for life, but rests entirely on the allegation that the contract was made through the president, no cause of action is stated. Though it is not necessary to allege that the hiring was through the president, it was not improper, and the whole pleading must be considered in determining whether it states a cause of action."

In this case the New York court held that where the petition alleged that the life contract was made between the injured person and the president of the corporation, the petition did not state a cause of action; therefore, if the petition does not state a cause of action, proof of the allegations made in the petition does not make a case to go to a jury.

In this case the petition and the proof show that this contract, if made, was made with A. B. Caldwell. There is not a scintilla of evidence that A. B. Caldwell was ever authorized by The Standard Oil Company of Ohio to enter into such a contract.

Counsel for the plaintiff contend that it is a question of fact for the jury to determine from the facts and circumstances of this case, whether or not Mr. Caldwell had that implied authority. The court can not agree with that contention, for the reason that all of the courts have said that officers or employees have no such implied authority, and therefore a jury could not be warranted in finding that Mr. Caldwell had such authority when the courts have said as a matter of law that he had not; and in my judgment, this court would commit error in submitting the case upon the basis that this jury might find that he had implied authority to enter into this contract.

That leaves the question of whether or not this contract was, even though made without authority by Mr. Caldwell, ever ratified by The Standard Oil Company of Ohio.

Counsel in his opening statement to the jury said that he expected to prove that the contract was made by Mr. Caldwell and ratified by The Standard Oil Company of Ohio.

One of the basic principles of the doctrine of ratification is that the person or corporation, who or which it is claimed ratified an act, had knowledge of the act. Applying that doctrine to this case, it means that before any ratification could be claimed against The Standard Oil Company, there must be a clear showing that the corporation had knowledge of the contract which Mr. Caldwell entered into with the plaintiff.

That proposition was settled in Ohio, as in every other jurisdiction, by the Green case reported in 126 Oh St at page 512, in which Judge Jones speaking for the Supreme Court, without attempting to quote the language used, in effect says that ratification can never be shown without proof that the corporation had knowledge of all the facts. Lacking such proof, the doctrine of ratification has no application.

The best that can be said for this evidence is that Mr. Caldwell had knowledge of the facts, and that one subordinate under him, a Mr. Weber,

who is now deceased, had knowledge of the facts, but there is no evidence that The Standard Oil Company of Ohio ever had knowledge of the claim of the plaintiff that he had a life tenure of employment.

The Green case in Ohio, as well as the **Standard Textile Products** case reported in **23 Abs 70**, are along the same lines, and in conformity with the views expressed by other courts of last resort.

There are two further cases to which the court desires to direct attention. One is the Maxon case which arose in Michigan, and is reported in 117 Mich. at page 218. In that case, as part of the consideration for the injury of a railroad employee, the division superintendent of the railroad agreed with the plaintiff that if he would refrain from prosecuting his claim for damages, the railroad would furnish him a job during the period of his natural life. Later the employee brought an action for breach of that contract, and the Supreme Court of Michigan held:

"A division superintendent of a railroad has no implied authority to bind the company by an agreement to give life employment to an employee of the company in settlement for a claim for personal injuries."

Recovery was denied.

The other case that the court desires to direct attention to is the case of Bohanan v The Boston & Maine Railroad, in 70 N. H., 526.

Under the law as I find and construe it, the court can not submit this case to the jury and let them draw an inference that Mr. Caldwell at the time had the authority to enter into this contract, because all of the courts that have considered this question have said that no such inference is possible under the law, and the court can not submit this case to the jury on the question of whether or not The Standard Oil Company of Ohio ratified any contract in which Mr. Caldwell may have entered because there is not a scintilla of evidence in this record that The Standard Oil Company of Ohio, or any

of its officers, ever had any knowledge of this contract or of the claim that this contract had been made.

It follows from what has been said, that the motion of the defendant is well taken, should be, and hereby is, granted.