## FIDUCIARY MUST ESTABLISH FAIRNESS OF TRANSACTION.

Circuit Court of Cuyahoga County.

A. H. ATWATER, AS GUARDIAN OF WINNIFRED JONES, IMBECILE,
v. CHARLES P. JONES ET AL.*

Decided, January 30, 1902.

*Fraud and Duress—Burden Upon Fiduciary to Show Fairness of Transaction.*

If it appear that a fiduciary or confidential relationship exists between the parties to a transaction, or if it be established by evidence that one of the parties possessed a power or influence over the other, or that one was of very weak mind by reason of sickness or mental decline, the burden of proof lies upon the party filling the position of active confidence or possessing the power or influence, as the case may be, to establish, beyond all reasonable doubt, the perfect fairness and honesty of the transaction.

*C. F. Morgan* and *C. W. Fuller,* for plaintiff.
*Foran, McTighe & Baker* and *Henry & Couse,* contra.

CALDWELL, J.; HALE, J., and MARVIN, J., concur.

This action is before us on an appeal from the judgment of the court of common pleas. The action was commenced by A. H. Atwater, as guardian of Winnifred Jones, an imbecile, against Charles P. Jones, a son of Winnifred Jones, and Ida M. Jones, the wife of Charles P. Jones, and the Euclid Avenue Savings & Banking Company; it grew out of these facts: ·

Winnifred Jones owned two parcels of property; one on Broadway in the city of Cleveland, on which were two houses, in one of which she lived with her husband during his lifetime; the other one on Marcelline avenue in the same city. The husband of Winnifred Jones died in 1896, and, not long thereafter and in the same year, she went to make her home with her son, Charles P. Jones, who resided in the property owned by her on Marcelline avenue.

*Affirmed without opinion, *Jones et al* v. *Atwater, Gdn.,* 70 Ohio State, 421.

In 1896 proceedings were commenced in the probate court to have a guardian appointed over Winnifred Jones, claim being made that she had become an imbecile. About January 5, 1899, those proceedings were terminated by the appointment of Ida Jones, the wife of Charles P. Jones, as trustee to care for the property and person of Winnifred Jones. Before this action was taken the probate judge had determined, and so announced to the attorneys in the case, that he could not appoint a guardian for Mrs. Winnifred Jones, as he did not regard her so far demented by reason of her sickness and age, that he should interfere by appointing a guardian. About the time that this was announced to the attorneys, Winnifred Jones made a deed of all her property, which consisted of the two parcels of real estate above referred to, to Charles P. Jones, reserving in the deed, to herself a life estate, and the consideration of the deed was that Charles P. Jones should support her during her life.

In the early spring of 1899 proceedings were again commenced against Winnifred Jones to have her declared an imbecile, which proceedings terminated in the summer of that year by the appointment of A. H. Atwater as her guardian, and in said proceedings she was declared an imbecile by the probate court of this county. Not long after the guardian was appointed, Winnifred Jones, upon the request of the guardian, went to live with her daughter, Lillie M. Kunker, and, in 1901, died; and after her death this action was revived in the name of Mrs. Emma Barkwell and Lillie M. Kunker.

The action, as originally brought by the guardian of Mrs. Winnifred Jones and as it has been tried in this court, is to set aside the deed of conveyance by Winnifred Jones to her son, Charles P. Jones. After this deed was executed, seven hundred dollars was borrowed on this property from the Euclid Avenue Savings & Banking Company and secured by a mortgage on the property, the papers being executed by both the grantor and the grantee in the conveyance. spoken of.

The ground on which the deed is asked to be set aside is, that Winnifred Jones, at the time she executed the same, was incapacitated from doing business on account of great mental

weakness, and that there was fraud practiced upon her by her son, Charles P. Jones, and his wife.

Sometime after the execution of the mortgage to the bank, Charles P. Jones transferred these two parcels of real estate to his wife.

Winnifred Jones had, in 1896, at the time of the death of her husband, after paying the funeral expenses, some seven hundred dollars in the bank and had that amount of money when she went to live with Charles P. Jones and his wife, and, during all the time she lived there, she received the rent from the two houses on the Broadway property, they residing in the other property. At the time of the transfer, or at least at the time of the mortgage from the bank, none of this personal property remained.

The evidence in this case shows, to the entire satisfaction of our minds, that Mrs. Winnifred Jones at the time of the execution of this deed was incapacitated from transacting any business, by reason of mental decline or great mental weakness, although not actually amounting, perhaps, to insanity or imbecility. The doctor who attended her in her last illness describes her disease as hardening of the arteries and testifies that it is one of that nature which is quite likely to be attended with mental weakness and imbecility; that the disease must have been in progess for a number of years, and that the weakening of the body under this disease had been attended by a like weakening of the mind; this testimony of the doctor accords fully with the testimony of the other witnesses. There are but very few witnesses who make the mind of Mrs. Winnifred Jones normal for a person of her years up to the time of her death. Some noticed a marked change soon after the deed was made, while others had observed this weakening of the mind, as well as of the body, from 1896. This testimony all harmonizes, with the exception of the few I have spoken of, to the end that she had a physical ailment that was constantly growing upon her (and which finally terminated in death), that brought upon her great physical weakness, and that attending this disease was a decline of the mind. The time when different witnesses noticed this decline varies, as I have just said,

some placing it as early as 1896, and some later; and her daugh-
ter-in-law, Mrs. Charles P. Jones, claims, in her evidence, that
she did not notice it until after the deeds were executed to her
husband; but the evidence, as a whole, is conclusive that the
weakening of the mind and the body had been going on together
for a number of years, and is conclusive that her mind had be-
come weak to such an extent that at the time of the deeds being
made by her to her son, she was entirely incapacitated from
the transaction of business of that character.

It is important, always, in a transaction of this kind, to de-
termine what consideration passed between the grantor and the
grantee. She transferred to her son this property, reserving
to herself a life estate, and the only consideration for the deed
was that he was to give her support during her life.

The evidence clearly shows in this case that Charles P. Jones,
from 1896 down to the time the deed was made to him, earned
no money of any consideration whatever, and this was well
known to his mother; nor did he, after the making of the deed,
earn any money. Whether he is incapacitated from earning
money or not, does not appear in the case, nor is any good rea-
son given why he did not during that time work and earn
money. So when the mother made the deed to the son, she must
have known that he was unable to support her if he continued
according to his past life; and that he did not intend faithfully
to carry out his part of the contract fully appears from the
fact that after the deed was made, he did nothing towards earn-
ing a living either for himself or his mother, and that not long
after it became necessary to borrow money, which, we have no
doubt, was used for their mutual support, and the mortgage
that was given on the property put in hazard her life estate.

At the time this contract was made it was evident to the son
that his mother was very weak, both physically and mentally,
and that her decline had been going on for some time and at
that very time was seeming to gather force by reason of her
disease and her years, and he knew that she could live but a very
short period of time; at least, no one who knew her and her
condition could form an honest expectation of life beyond a
very few years.

The property he received is worth, by fair estimate, as shown by the testimony in the case, six thousand dollars. So if there was not an entire failure of consideration in the transaction, there was at least a very inadequate consideration. We think it fair in this case to say that in the mind of the grantee at the time the deed was made, as shown by his conduct prior thereto and thereafter, there was no consideration whatever. The action of the parties after the deed was made, in every way shows that it was his intention to live upon this property by borrowing money or by exhausting the rents, to which he had no right in law.

It appears, then that this conveyance was made by a grantor who was incapacitated at the time, and was without consideration in fact. That being found, it follows that the conveyance must be set aside.

Considerable was said during the argument of the case, as to whether actual undue influence or fraud must be shown in this action, and upon whom was the burden of proof. While this question is not essential to the decision of this case, still we are inclined to say something upon this question.

It has been said that fraud is never presumed, but must always be proved. It is not meant by that, that the fraud must be proved by direct evidence, for a party who commits a fraud always covers up his proceedings in a way that it is difficult, if not impossible, in nearly all cases, to prove the very act or the very intent of the party who has committed the fraud. Therefore, it is always proper to prove fraud by circumstances, and actual fraud is inferred in nearly all cases by the circumstances proved, and the burden of proving fraud is, in most cases, upon the party who avers it. Hence it is laid down in *Wait on Fraudulent Conveyances*, Section 271:

"In general the obligation of proving a fact rests upon the party who substantially asserts the affirmative of the issue. With the possible exception of conveyance to the wife by a husband, the burden of proof in cases where the instrument is valid upon its face, generally rests upon the creditor to show a fraudulent intent or absence of consideration. A creditor may succeed under the statute in New York simply by proving a fraudulent intent. If, however, the vendee, having the burden

thus cast upon him, shows that valuable consideration was paid
for the transfer of the property, then proof of the vendor's
fraudulent intent is insufficient; there must be evidence of a
fraudulent intent on the part of the vendee, or that he had
notice of the vendor's design.   Where a strong doubt of the
integrity of the transaction is created, the duty of making a
full explanation, and the burden of proof to sustain it, rests
with the insolvent.''

This, we think, expresses the rule as to fraud generally.   But
it is claimed that this rule does not apply where the parties
stand in a fiduciary relation, where there is confidence.

*Bigelow on Fraud,* Vol. 1, at pages 261-2, says:

''When a party complaining of a particular transaction, such
as a gift, sale, or contract, has shown to the court the existence
of a fiduciary or a confidential relation between himself and the
defendant, and that the defendant occupied the position of
trust or confidence therein, the law raises a suspicion or, it is
said, a presumption of fraud; a suspicion or presumption, aris-
ing as a matter of law, that the transaction brought to the no-
tice of the court was effected through fraud, or what comes to
much the same thing, undue influence by the opposite party,
by reason of his occupying a position affording him peculiar
opportunities for taking advantage of the complaining party.
Having special facilities for committing fraud upon the party
whose interests have been entrusted to him, the law, looking
to the frailty of human nature, requires the party in the supe-
rior situation to show that his action has been honest and hon-
orable.''

Further on, it is said:

''For the protection of the former (weaker) person the law
raises a suspicion or presumption that the transaction between
the parties has been effected through undue and illegal means
by the latter—that the party in the superior position has used
that position to the injury of the party in the inferior situation;
and this suspicion or presumption must be overcome if the
transaction be impeached, before the superior party in the situ-
ation can retain the benefit received.''

There are many cases cited both in the briefs of counsel and
in the text-books from which I have quoted, showing that this
rule is adhered to strenuously by courts of equity, and it is

upon the principle that, in order to bind a party, there must be a full and free consent. Consent is an act of reason accompanied with deliberation; and, in transactions in which one of the parties is not as free and voluntary an agent as the other, or does not apprehend the meaning and effect of what he is doing, it wants the very qualities which are essential to the validity of all transactions. There is no legal consent except that which is given with reflection and with knowledge, without restraint or surprise; and anything that takes away this reflection or judgment will nullify consent, and it is on this principle that courts of equity say that when a person who, from his state of mind, age, weakness or other peculiar circumstance, is incapable of free discretion is induced by another to do any act which may tend to the injury of himself or his representatives, that other shall not be allowed to derive any benefit from his improper conduct. And it is upon this principle that contracts of idiots, lunatics, and other persons *non compos mentis,* or persons in a fiduciary relation, where one has a great advantage of mind or position over another are deemed invalid in a court of equity; but the mere fact that a person is of unsound mind or is in confinement will not *per se* call upon a court to interfere, especially where the transaction was for his own benefit and if he knew what he was doing. Upon this same principle, if it appear that a fiduciary or confidential relation exists between the parties to a transaction, or if it be established by evidence that one of the parties possessed a power or influence over the other, or that one was of very weak mind by reason of sickness or mental decline, the burden of proof lies upon the party filling the position of active confidence or possessing the power or influence, as the case may be, to establish, beyond all reasonable doubt the perfect fairness and honesty of the transaction.

Then, when it was made to appear in this case that Mrs. Winnifred Jones was, at the time she made this deed, of old age, sick and in a mental decline and her mind had become very weak it would, from such facts, devolve upon the son to show by clear and convincing eveidence that the transaction was fair and voluntary on her part and that no undue influence was

used to bring about the conveyance.   When there is added to this the fact that the contract was one in which he got by far the best of the bargain and which amounted to a conveyance to him for no consideration that he intended at the time to render, as shown by his subsequent conduct, the contract is void in the sense that it may be avoided by reason of such facts, and the burden of showing that it was fair and without any restraint is upon him.

In other words, great mental weakness, and an unfair consideration, where the parties stand in a fiduciary relation, will avoid the contract, and, under such circumstances, the law raises the presumption that the transaction was brought about by the undue influence of the vendee.

The defendants, Charles P. Jones and his wife, have failed to sustain themselves under this burden of proof.   The whole transaction was brought about without any one being present who was specially interested on behalf of Mrs. Winnifred Jones and who was not also interested in behalf of the defendants.

Under the circumstances that existed in this case it has been held that in order to make a conveyance of this character good, it is necessary that the aged parent should have counsel and advice from one who is in no wise interested on behalf of the grantee.   That was not done in this case.   A great deal of formality was gone through with in obtaining the deed, and much was done that it is difficult for the court to understand why it was done, except on the ground that there was an apprehension on behalf of those who were obtaining the deed that possibly it might not be good because of the condition of the grantor's mind; and the grantees  absenting themselves from the room while all this formality was going on, can be explained in this case, in no other way, or at least it is not explained; and the only rational inference to be drawn from it is that they were under apprehension that her capacity might be questioned and it would be well that they should not be present while the deed was being made.

There is an entire failure on the part of the grantee and his wife to show that there was no fraud, no undue influence, and

that they were in no way to blame for the obtaining of the deed.

It is claimed on behalf of the two daughters, who are the real plaintiffs in this case, that the seven hundred dollars borrowed at the bank should be taken from the interest of Charles P. Jones in this property as heir; and that claim is made upon the ground that he used the money for his own benefit. The evidence is not clear as to who used this money. There is some evidence that, in our minds, tends to show that some portion of it was used to pay debts which Winnifred Jones owed—how and when those debts were contracted does not appear—and if this conveyance is set aside, it is not unfair to the defendants that they should be rewarded in some way for the care they gave to their mother while she lived with them.

On the other side, it is claimed that they really absorbed the seven hundred dollars she had left after paying the funeral expenses of her husband, and absorbed all the rents from the time of the death of her husband until the borrowing of the seven hundred dollars and have absorbed the rents since that time until a receiver was appointed in this case; but just how that money was used by the defendants is not made clear by the testimony in the case.

We think it clearly appears that very much, or all of this money, was used by them and that they have been amply rewarded in the use of that money for any service they gave to their mother, both before and after making the deed.

It is our judgment in this case that the deed of this property in which Winnifred Jones conveyed to Charles P. Jones, be set aside as void, and that the wife of Charles P. Jones having given no consideration for the deed to her from her husband, that deed also be set aside. The plaintiffs are to pay one-half the costs of this action, and the defendants, Charles P. Jones and his wife, are to pay one-half of the costs. The bank's mortgage remains a lien on the entire property.