VNERAKRAFT, INC., APPELLEE, *v.* ARCARO, APPELLANT, ET AL.,
APPELLEES.*

(No. 8575—Decided May 11, 1959.)

*Messrs. Nieman, Aug, Elder & Jacobs,* for appellee Vnerakraft, Inc.

*Mr. Richard T. Carroll* and *Mr. Norbert J. Bunks,* for appellees Paul William Weisgerber and Mary Carol Weisgerber.

*Messrs. Goodman & Goodman* and *Mr. Louis J. Kull,* for appellant Harry Arcaro.

*Messrs. Tischbein & McDaniel,* for appellee George E. Tischbein.

O'CONNELL, J. In 1957, the appellant, Arcaro, entered into a contract with Paul William Weisgerber to build a house on Lot No. 5 of Spirito Subdivision in Green Township, owned by Paul William Weisgerber and his wife, Mary Carol Weisgerber. Acting as general contractor, Arcaro entered into numerous contracts with various subcontractors, materialmen and laborers for various items of material and labor used in the construction of the house. Among such subcontractors was Vnerakraft, Inc., the appellee herein, who filed an action to recover the sum of $1,059.79 from the appellant and to foreclose a mechanic's lien acquired by the appellee on the property of Paul William Weisgerber and Mary Carol Weisgerber.

The construction of the house was financed through the Twenty-Third Ward Building Association Company, whose mortgage on the premises was in the sum of $16,000.

Upon the completion of the dwelling, Arcaro failed to pay

---

*Motion to certify the record overruled, November 4, 1959. Appeal dismissed, 170 Ohio St., 56.

the plaintiff and other subcontractors, materialmen and laborers, who filed and perfected mechanics' liens to secure the balance due for the work and material claimed.

The Twenty-Third Ward Building Association Company paid out during the course of construction almost all of the $16,000, including $2,510.18 directly to Arcaro, who also received $350 from the Weisgerbers. The balance still held by the building association company is in the sum of $770.30.

Answers were filed by all parties defendant to this action, including one by Louis J. Kull, guardian for Arcaro, in which it was alleged that Arcaro has been under guardianship since 1934 and that the contracts made by him were void.

An application for guardianship on behalf of Arcaro was made on October 15, 1934. It is to be found in Guardianship Docket 30, page 87, Case Number 125488, Probate Court Records. This application was for a guardianship for an incompetent veteran who was entitled to a federal pension of $100 a month.

Likewise, on October 23, 1934, the Probate Court by entry found that Arcaro was an incompetent veteran and incapable of handling his own affairs.

The trial court in its opinion held that many witnesses expressed the view that at the time the contract was made Arcaro showed no signs of mental incapacity; that, by a preponderance of the evidence, he had been in the contracting business, had built many homes, and had held himself out as a building contractor; and that there was no indication of any mental illness when he signed the contract with the Weisgerbers or when he made his contracts with the subcontractors.

The trial court therefore found that the preponderance of the evidence indicated that Arcaro was mentally capable of carrying on the business in which he was engaged, and that he knew the extent of the contracts he was entering into. The trial court therefore determined that Arcaro was fully responsible for his contractual obligations, and that the plaintiff together with the other subcontractors and defendants were entitled to the relief prayed for. The court therefore found that at the time of making the contracts Arcaro was not incompetent.

This court is of the opinion that the judgment of the trial

court was in accordance with law and reason, for it is within the authority of the Common Pleas Court to find that a person formerly adjudged an incompetent is competent at a later date.

And so it was decided in *In Re Remus,* 119 Ohio St., 166, 162 N. E., 740, that one who is acquitted of murder on the sole ground of insanity, and who has been committed to a hospital in consequence thereof may seek a writ of habeas corpus for the purpose of showing that he is sane at the time of seeking the writ.

And if the finding of incompetency of Arcaro by the Probate Court on October 23, 1934, is prima facie evidence of incompetency, then it may well be that the burden is on the plaintiff in this case to remove this presumption. This court is of the opinion that the plaintiff so removed such burden. So the *Remus case* holds: "The verdict of acquittal on the ground of insanity is *prima facie* evidence of the inmate's insanity, and the presumption of insanity thereafter continues; and in order to obtain his release from such hospital by writ of *habeas corpus,* the inmate has the burden of removing that presumption and of establishing with reasonable certainty his sanity."

Moreover, in 29 Ohio Jurisprudence (2d), 570, Section 34, it is said that: "If one at the time of a transaction understands the nature, extent, and scope of the business he is about to transact, and possesses that degree of mental strength which would enable him to transact ordinary business, he is, in law, considered a person of sound mind and memory." Certainly, the trial court so found in the case at bar.

This court therefore finds that there is no error in the record prejudicial to the appellant. The judgment of the Court of Common Pleas of Hamilton County is, therefore, affirmed.

*Judgment affirmed.*

Matthews, P. J., and Long, J., concur.