TESTA, EXR., APPELLEE AND CROSS-APPELLANT, *v.* ROBERTS ET AL., APPELLANTS AND CROSS-APPELLEES.∎

162

(No. L-87-043—Decided
March 4, 1988.)

*Warren D. Wolfe,* for appellee and cross-appellant.

*Roger J. Kania,* for appellants and cross-appellees.

CONNORS, J. This appeal arises from the Lucas County Court of Common Pleas, Probate Division, wherein that court entered judgment in favor of plaintiff-appellee and cross-appellant (hereinafter appellee), finding that monies in the hands of defendants-appellants and cross-appellees (hereinafter appellants) are the property of the estate of Florence M. Whipple and ordering that these funds be turned over to the executor of that estate. The facts of this case are as follows:

Following a short illness and subsequent confinement to a nursing home, Florence M. Whipple, decedent, executed a power of attorney appointing her nephew, Jack Roberts, her attorney-in-fact. Said power of attorney, signed by decedent on October 7, 1983, gave Roberts the general authority to conduct decedent's business and included the control of her bank accounts.

Beginning in January 1984, Jack Roberts proceeded to transfer funds from savings accounts held solely under the name of Florence M. Whipple and distributed these funds in the following manner:

(1) January 17 1984 — transferred $20,009.17 to a joint and survivorship account in the names of decedent and himself.

(2) July 17, 1984 — transferred $35,633.58:

(a) $10,000 to a joint and survivorship account in the names of decedent and appellant Jacqueline Breno, a grandniece.

(b) $20,000 to a joint and survivorship account in the names of decedent and appellant Ralph Roberts, a nephew.

(c) $5,633.58 to an account in the name of decedent only.

(3) July 19, 1984 — transferred $24,768.58:

(a) $10,000 to a joint and survivorship account in the names of decedent and Lloyd Cary, a nephew.

(b) $14,768.56 to decedent's checking account.

(4) August 2, 1984 — $32,460.25 to decedent's checking account.

(5) Sometime after August 2, 1984 — $40,000 to a money market account at E.F. Hutton which was later invested in annuities in the names of himself, appellant Ralph Roberts, and appellant Virginia Roberts.

(6) January 16, 1985 — $20,000 to a joint and survivorship account in the names of decedent and himself. Withdrew a check made payable to Jack Roberts for $2,706.47.

According to witness testimony, Mrs. Whipple's mental state during this period varied from "confused and agitated" to "almost normal." In addition, between January 1984, and the

time of her death on July 10, 1985, decedent suffered two strokes, the second leaving her partially disabled.

After Florence M. Whipple's death, the various accounts engendered by her attorney-in-fact were again made joint and survivorship with the respective spouses of the original joint tenants. Jack Roberts died shortly after his aunt. Lloyd Cary is not a party to this action having settled with appellee prior to trial.

The record also reveals that decedent left a will dated April 28, 1978, and a codicil dated September 20, 1978. Under this will, the parties to this action were devised specific, but modest, bequests. The residue of the estate was bequeathed to charity. At the present time, approximately $122,000 is in the estate and $90,000 is in the possession of appellants.

The court below concluded, among other things, that Florence M. Whipple did not have the requisite mental capacity on October 7, 1983, to sign a power of attorney, thus invalidating this instrument, and that she was incapable of understanding or ratifying the various fund transfers made by Jack Roberts pursuant to that legally invalid power of attorney. Based on these conclusions, the court ordered appellants to pay to appellee the balance of their respective accounts plus accrued interest. From these findings and order appellants filed a timely appeal and set forth the following assignments of error:

"I. The lower court's decision stating that the facts show a clear intent to take advantage of an elderly widow, confined to a nursing home by periods of mental fatigue and strokes (finding of fact, p. 8) and that Florence Whipple was incompetent to sign a power of attorney on October 7, 1983 (finding of fact, p. 9) was clearly against the manifest weight of the evidence presented at trial.

"A. There was no testimony * * * adduced at trial indicating that Ms. Whipple lacked the required testamentary capacity to dispose of her property in the way she saw fit.

"B. The plaintiff brought forth no testimony to rebut the defendant's [sic] testimony that the decedent had had the power of attorney read to her and that she understook [sic] it and signed it.

"II. The lower court erred in finding that the decedent did not ratify the acts of her agents, Jack Roberts and Ralph Roberts.

"III. The lower court erred in its conclusions of law when it stated the defendant[s] had the burden of showing that no undue influence was used and that the decedent acted voluntarily and with full understanding of the act and its consequences.

"A. A person is presumed to be competent until it is shown otherwise.

"B. The plaintiff failed to show any evidence that the decedent was incapacitated or incompetent at the time the power of attorney was signed.

"IV. The lower court erred in not allowing the decedent's witnesses to testify as to what the decedent, Florence Whipple, had told them concerning the setting up of accounts and the signing of the power of attorney."

Appellee also filed timely a cross-appeal asserting as his sole assignment of error:

"The Trial Judge failed to award plaintiff interest at the rate of 10 per cent per annum pursuant to § 1343.03(A), Ohio Revised Code, from the date of his decedent's death."

Initially, appellants contend that the probate court's finding that Florence M. Whipple did not have the mental capacity to sign a power of attorney on October 7, 1983, was against the manifest weight of the evidence adduced at trial.

We wish to note at the outset that

appellants set forth in their brief several arguments and supporting case law involving the requisite mental capacity for the making of a will. To dispel any confusion concerning that legal standard and the mental capabilities required to sign a power of attorney, this court will briefly discuss the meaning and creation of a valid power of attorney.

A power of attorney is a written instrument authorizing an agent to perform specific acts on behalf of his principal. *Trenouth* v. *Mulroney* (1951), 124 Mont. 499, 227 P. 2d 590. In Ohio, the execution of a power of attorney is controlled by statute and must conform to its provisions to be valid. See R.C. 1337.01. The creation of a power of attorney requires that the principal be mentally competent at the time the power is executed. 3 American Jurisprudence 2d (1986), Agency, Section 24. Derived from contracts law, the test to be used to determine mental capacity is the ability of the principal to understand the nature, scope and the extent of the business she is about to transact. *Vnerakraft, Inc.* v. *Arcaro* (1959), 110 Ohio App. 62, 64, 12 O.O. 2d 229, 230, 168 N.E. 2d 623, 625.

The party seeking to prove mental incapacity to sign a power of attorney must do so by clear and convincing evidence. *Lyon* v. *Jackson* (App. 1955), 72 Ohio Law Abs. 5, 8, 132 N.E. 2d 779, 781.

This brings us to the essence of appellants' first assignment of error, *i.e.,* whether the trial court's findings were contrary to the weight of the evidence. In determining whether a lower court's judgment is against the manifest weight of the evidence, the standard established by the Ohio Supreme Court mandates that:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus.

In *Seasons Coal Co., Inc.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273, the court further delineated the duty of a reviewing court in reversing a judgment as being against the manifest weight of the evidence by stating:

"While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier of fact were indeed correct.

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., supra,* at 79-80, 10 OBR at 410, 461 N.E. 2d at 1276.

We are presently faced with conflicting testimony as to Florence M. Whipple's mental state at the time she signed the power of attorney. Although mere confusion and the infirmities of old age are not of themselves determinative of an incapacity to transact one's business, they are competent proof of capability to understand the nature of the transaction and the ability of one to protect his own interests. *Monroe* v. *Shrivers* (1927), 29 Ohio App. 109, 162 N.E. 780, paragraph five of syllabus.

In the case *sub judice,* the nurse, as an unbiased witness, testified that decedent's mental state during the ear-

ly portion of October was confused and agitated. This same witness further stated that Mrs. Whipple was administered particular types of medication during this critical period and that, as admitted by appellants, decedent's ability to function was adversely affected. Other witnesses, including some of appellants, also attested to Mrs. Whipple's impaired mental and physical condition on or about October 7, 1983. In fact, appellants requested that the medication be changed due to the unusual behavior patterns displayed by decedent at this time.

Despite the fact that other witnesses testified that Florence M. Whipple appeared fairly alert during at least a portion of her stay in the nursing home, we must keep in mind that witness credibility is an issue reserved for the trier-of-fact. Since the trial judge in this instance had the opportunity to view all the witnesses and their demeanor, gestures and voice inflections, we must accord his judgment the utmost deference. Thus, this court finds that there was sufficient competent and credible proof offered at trial on the issue of Florence M. Whipple's mental incapacity to prove by clear and convincing evidence that she was not competent to sign a power of attorney on October 7, 1983. Accordingly, appellants' first assignment of error is found not well-taken.

In their second assignment of error appellants claim that Mrs. Whipple ratified the acts of her agents, Jack Roberts and Ralph Roberts.

If, as appellants argue, the two nephews were acting as agents for their principal, Aunt Florence, the relationship must be characterized as fiduciary in nature. *Connelly* v. *Balkwill* (1954), 160 Ohio St. 430, 440, 52 O.O. 329, 333, 116 N.E. 2d 701, 707. A fiduciary/agent, particularly one in confidence with his principal, owes the utmost loyalty and honesty to that principal. *Id.; Peckham Iron Co.* v. *Harper* (1884), 41 Ohio St. 100. See, also, *Atwater* v. *Jones* (1902), 24 Ohio C.C. (N.S.) 328, 34 Ohio C.D. 605, headnote. His fiduciary status imposes upon an agent an affirmative duty to inform his principal of all of the facts relating to the subject matter of the agency that affect the principal's interest. *Indianapolis* v. *Dumhoff & Joyce Co.* (1941), 69 Ohio App. 109, 23 O.O. 547, 36 N.E. 2d 153. Ratification by a principal cannot occur unless that principal has full knowledge and understanding of the acts performed by the agent. *Morr* v. *Crouch* (1969), 19 Ohio St. 2d 24, 29, 48 O.O. 2d 43, 45, 249 N.E. 2d 780, 784. Moreover, the burden of proving that a principal ratified an agent's acts is upon the agent who must clearly show that the principal had knowledge of all the facts pertaining to the act. *Litchfield* v. *Standard Oil Co. of Ohio* (1939), 16 O.O. 67, 69-70, 5 Ohio Supp. 260, 263. Therefore, appellants had the burden of proving that Florence M. Whipple had full knowledge of the transfers of her funds and ratified those transfers.

In the case at bar, appellants assert that decedent had full knowledge of the transfers of her monies by Jack and Ralph Roberts. However, the facts indicate that decedent was incapable of understanding or approving of the conveyance of her funds. Mrs. Whipple's health, both mental and physical, deteriorated continuously after October 1983. Additionally, when relatively lucid, she repeatedly requested that her nephew return her "bank books."

Appellants make much of the fact that decedent never revoked the purported power of attorney pursuant to R.C. 1337.02. However, upon examination of the record we cannot construe Mrs. Whipple's silence in this regard as ratification of the Roberts' acts. Mere inaction is insufficient to

show ratification of an agent's unauthorized act. *Morr, supra,* at 29, 48 O.O. 2d at 45, 249 N.E. 2d at 784. As stated previously, ratification must be preceded by full knowledge on the part of the principal. The record in the instant case reveals only testimony of interested parties as to Mrs. Whipple's knowledge of the transfers of her monies into appellants' accounts. Even this testimony is conflicting as to what facts were disclosed to decedent, who disclosed those facts, and when, if ever, full disclosure occurred. Moreover, as previously stated, a principal cannot ratify the acts of an agent if she lacks the mental capacity to comprehend the nature of those unauthorized acts.

Furthermore, we agree with the trial court in finding that Florence M. Whipple could not have intended to convey away the funds necessary to survival in her later years or allow her agents to determine where her property would succeed upon her death. Decedent did not die intestate. Her will sets forth explicit and specific bequests to relatives and devises the bulk of her estate to charity. Prior wills executed by Mrs. Whipple contain essentially identical terms. Even if this court would find that a valid power of attorney existed, which we do not, we could not rule that said power granting her attorney-in-fact the authority to conduct decedent's ordinary business transactions while she was ill was intended to enable appellants to do with Mrs. Whipple's property as they wished, and to act counter to the expressed desires evidenced by her will.

Inasmuch as we find that Florence M. Whipple was incapable of understanding the disclosures, if any, made to her by appellants, we also find that she could not have ratified the transfer of her funds. Accordingly, appellants' second assignment of error is without merit and found not well-taken.

Appellants next contend that the trial court erred by placing upon them the burden of showing that no undue influence was employed in obtaining Florence M. Whipple's signature on the power of attorney. In support of this contention appellants, in essence, restate the test for mental incapacity and its underlying legal presumption of competency. This court has already found that Mrs. Whipple was mentally confused on October 7, 1983, and that this condition barred any execution of a valid power of attorney. We have also reviewed and held that the court below was correct in finding that appellee had proven decedent's mental incapacity by clear and convincing evidence. Assuming, however, that appellants are now asserting only that the probate court erred as a matter of law by placing the burden of going forward as to the nonexistence of undue influence upon those parties, this court will consider that assertion.

In a transaction where one party occupies a confidential or fiduciary relationship with another party, a presumption arises that the occupier of the superior position must go forward with the burden of proof on the issue of the fairness of the transaction. *Atwater, supra,* at 334, 34 Ohio C.D. at 611-612. See, also, *McCluskey* v. *Burroughs* (1982), 4 Ohio App. 3d 182, 4 OBR 284, 446 N.E. 2d 114. Accordingly, appellants carried the burden of going forward in showing that no undue influence was used and that Florence M. Whipple acted voluntarily and with full understanding when she signed the power of attorney.

Our perusal of the record substantiates the trial judge's finding that there was "a clear intent to take advantage of an elderly widow, confined to a nursing home by periods of mental fatigue and strokes." It is our view that even though appellants proffered some evidence that the signing of the

power of attorney was accomplished fairly, appellee successfully rebutted this proof by clear and convincing evidence of decedent's mental incapacity and her resulting susceptibility to outside influences. For these reasons, we find appellants' third assignment of error not well-taken.

In their final assignment of error appellants assert that their witnesses should have been allowed to testify as to what Florence Whipple told them concerning the establishment of the various accounts and the signing of the power of attorney. Appellants rely on Evid. R. 804(B)(5), an exception to the hearsay rule, as the foundation for this contention. Unfortunately, both parties to this action and the trial court misinterpreted the meaning and usage of Evid. R. 804(B)(5).

Prior to 1980, Ohio courts applied R.C. 2317.03, the "dead man's" statute, to disqualify the testimony of an adverse party in a suit prosecuted or defended by the executor or administrator of a decedent's estate. *Johnson* v. *Porter* (1984), 14 Ohio St. 3d 58, 60-61, 14 OBR 451, 453-454, 471 N.E. 2d 484, 486. After the adoption of the Ohio Rules of Evidence, the Ohio Supreme Court found that Evid. R. 601, which governs the competency of witnesses, abrogated R.C. 2317.03. Thus, an adverse party may now testify against a deceased person provided that such person is a party by representation — an executor or an administrator. *Johnson, supra.* See, also, Staff Note to Evid. R. 804(B)(5).

Evid. R. 804(B)(5) excepts statements of a deceased person from the hearsay rule under the following conditions: (1) the declarant must be unavailable under Evid. R. 804(A), and (2) the "estate or personal representative of the decedent's estate" must be a party, and (3) the statement must have been made before the death or incompetency of the decedent, and (4)

the statement must be offered to "rebut testimony by an adverse party on a matter within the knowledge of decedent."

Although Evid. R. 804(B)(5) is an exception to the hearsay rule, it does not apply to the testimony offered by appellants as falling within its purview.

As stated in *Bilikam* v. *Bilikam* (1982), 2 Ohio App. 3d 300, 2 OBR 332, 441 N.E. 2d 845, paragraph four of syllabus:

"Evid. R. 804(B) is an exception to the hearsay rule for the benefit of a representative of a decedent to permit the decedent to 'speak from the grave' to rebut testimony of a party who may now testify under Evid. R. 601."

See, also, *Johnson, supra,* at 62-63 14 OBR at 455, 471 N.E. 2d at 487; *Simandl* v. *Schimandle* (1982), 3 Ohio App. 3d 357, 363, 3 OBR 414, 420-421, 445 N.E. 2d 734, 739-740. Staff Note to Evid. R. 804(B)(5). In other words, this hearsay exception is not applicable by the party opposing the decedent. Rather, it is a hearsay exception for the declarations of a decedent which rebut testimony of an adverse party and is available only to the party substituting for the decedent. *Bilikam, supra,* at 305, 2 OBR at 337, 441 N.E. 2d at 851. The exception was formulated to safeguard an estate from fraudulent claims and to create an "evidentiary balance" between the testimony now permitted through Evid. R. 601 and the contradictory, but hearsay, statements of a decedent on the same matter. See *Johnson, supra,* at 62-63, 14 OBR at 455, 471 N.E. 2d at 487.

Therefore, this court cannot consider the statements offered by appellants as exceptions to the hearsay rule under Evid. R. 804(B)(5). After a careful review of the trial court's transcript, we find that the disputed statements were either hearsay, or

that they were inadmissible on other grounds, or that the essence of the objectionable statements was eventually admitted into evidence through other answers and documents. Accordingly appellants' fourth and final assignment of error is found not well-taken.

Appellee claims as its sole assignment of error on cross-appeal that the court below erred in refusing to award Florence M. Whipple's estate interest at the rate of ten percent per annum pursuant to R.C. 1343.03(A) from the date of decedent's death. In this assignment of error, appellee is, in reality, presenting two issues for this court's consideration.

First, we must determine the point at which the monies owed appellee became due and payable. R.C. 1343.03 (A) and (B) provide:

"(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and *upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction,* the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

"(B) Except as provided in divisions (C) and (D) of this section, interest on a judgment, decree, or order for the payment of money rendered in a *civil action based on tortious conduct,* including but not limited to a civil action based on tortious conduct that has been settled by agreement of the parties, shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid." (Emphasis added.)

It is clear from the statute that the time of payment arose upon the rendering of the lower court's judgment and not at decedent's death. The action below was not in contract but had its basis in tort, *i.e.,* fraud and/or conversion. Therefore, appellee is not entitled to ten percent per annum interest from July 10, 1985. This brings us to the second issue which arises from appellee's assertion, to wit, is appellee entitled to ten percent interest per annum by operation of law from the time of judgment?

R.C. 1343.03(A) and (B) provide that the creditor is "entitled" to ten percent per annum interest on the monies due and payable to him from the time of judgment until the date the money is paid. Webster's New World Dictionary (1983) 205, defines "entitle" as "to give a right or claim to." Thus, R.C. 1343.03(A) bestows automatically a right to the statutorily stated interest as a matter of law. See *Jeppe* v. *Blue Cross* (1980), 67 Ohio App. 2d 87, 21 O.O. 3d 406, 425 N.E. 2d 947, paragraph two of syllabus. See, also, *Bierlein* v. *Alex's Continental Inn* (1984), 16 Ohio App. 3d 294, 303, 16 OBR 325, 334, 475 N.E. 2d 1273, 1284. Moreover, the principal and interest held in the accounts in appellants' names merged at the time of judgment and the ten percent per annum interest rate is applicable to that entire amount. *Hosford* v. *Automatic Control Systems, Inc.* (1984), 14 Ohio App. 3d 118, 120, 14 OBR 133, 135, 470 N.E. 2d 263, 265. Appellee's sole assignment of error is, therefore, found well-taken only insofar as the statutory interest is applicable to the monies owed at time of judgment.

In accordance with the decision of this court the trial court's judgment is

modified in the following respect: interest on judgment shall be entered at ten percent per annum from date of judgment.

In consideration whereof, we find that the judgment of the trial court is affirmed as to appellants and modified as to appellee.

*Judgment affirmed in part and modified in part.*

HANDWORK and GLASSER, JJ., concur.