DECISION.
Defendant-appellant Bakers Local No. 57 of the Bakery, Confectionery 
Tobacco Workers International Union, AFL-CIO, appeals from a judgment of $44,244 entered against it, and in favor of plaintiff-appellee Ricky Simpson, following a jury trial in the court below. For the following reasons, we affirm in part and reverse in part.
Ricky Simpson was the business agent of Bakers Local No. 57 ("the Local"). The business agent was the full-time union officer responsible for assisting union members with grievances and disciplinary matters, and with monitoring and enforcing collective-bargaining contracts. Simpson's salary and benefits were paid by the Local.
The Local's members and officers were governed by a set of bylaws. Section 6 of the Local's bylaws adopted the International Union's Constitution in its entirety and required its members to abide by that Constitution.[1] The Local's bylaws provided that an officer could be removed from office upon charges of serious misconduct when a full trial was conducted and the Local's Executive Board found the officer guilty of those charges. Otherwise, the officer was to remain in office until "[his] successors have been [elected,] qualified and installed." The Local never filed charges of serious misconduct against Simpson.
On August 17, 1994, Vester Newsome, the chief officer of the Local fired Simpson. Simpson contested his termination and by letter dated September 9, 1994, appealed to the Local's Executive Board. Prior to receiving a response from the Local's Executive Board, Simpson mailed a letter of appeal to the President and Executive Board of the International Union. On October 19, 1994, President Frank Hurt replied and informed Simpson that he was unable to settle the dispute and that Simpson needed to wait for a formal answer from the local board.
Simpson again wrote letters of appeal to the Local Executive Board on October 26, 1994, and on October 28, 1994. By letter dated October 28, 1994, the Local's Executive Board informed Simpson that it was approving his termination. Within fifteen days of receipt of this letter, Simpson appealed to the International Union and its Executive Board. On December 8, 1994, the International Union upheld the Local's decision to terminate Simpson, but, advancing the theory that a business agent had two roles, one as a salaried employee at will of the Local and the other as an elected unsalaried officer, ordered Simpson's reinstatement as an officer. Adopting this theory, the Local reinstated Simpson as a business agent officer, but stripped him of his salary, benefits and duties.
In March 1995, Simpson filed a complaint against the Local, asserting various claims arising from his termination as business agent. Several of these claims were dismissed during trial. Simpson appealed the dismissal of those claims to this court, and we reversed, holding that three of Simpson's claims for breach of contract and defamation remained viable.[2]
During the second trial, in August 2000, Simpson advanced a claim for defamation and two claims for breach of contract. The jury found in favor of the Local on the defamation claim and on the breach-of-contract claim that was based on a merger agreement.[3] But the jury found in favor of Simpson on his second breach-of-contract claim, which asserted that he had improperly been removed from office in violation of the Local's bylaws. The jury awarded Simpson $44,299 in damages.[4] The Local has timely appealed that award, bringing forth five assignments of error.
Simpson filed two post-trial motions, requesting attorney fees, prejudgment interest and costs. After a hearing on December 14, 2000, the trial court awarded Simpson $100,000 in attorney fees, $26,834.97 in prejudgment interest and $188.40 for additional costs. The Local has also timely appealed this order, challenging the imposition of attorney fees and prejudgment interest only. We have consolidated the Local's two appeals for purposes of this decision.
Under its first assignment of error, the Local contends that the trial court erred in failing to grant partial summary judgment in its favor, that the trial court erred in denying its motion for a directed verdict, and that the jury's verdict was erroneous. The Local advances two supporting arguments, which we address separately.
The Local first maintains that Simpson failed to exhaust all internal administrative remedies outlined in the bylaws for contesting an improper removal from office prior to filing a complaint with the court of common pleas. Specifically, the Local asserts that Simpson failed to appeal the decision of the President of the International Union, Frank Hurt, upholding the Local's termination of Simpson as a business agent employee. But the Local does not suggest to whom or where Simpson should have filed this additional appeal. Section 4 of the Local's bylaws was the only reference to an appeal procedure available to union members and officers. But it detailed the appeal process for members or officers who had been charged with serious misconduct and had had a hearing before the Local's Executive Board. As charges against Simpson for serious misconduct were never filed, there was no specific appeal process for Simpson to follow to contest his allegedly wrongful termination. Nevertheless, as this was the only section mentioning appeals, Simpson submitted letters written to the Local and International Union's Executive Boards to demonstrate that he had attempted to follow the bylaws.
Section 4 of the Local's bylaws stated that a decision by the Executive Board, either charging or not charging an officer with serious misconduct, was "subject to appeal as provided by Article XXII of the International Constitution." Article XXII provided that the charged party had to file an appeal within fifteen days of receiving the decision being appealed and that the appeal was to be directed to the General Executive Board of the International Union. Appeals from a decision of the General Executive Board had to be taken to the Convention, unless the next Convention was more than one year away from the time of the final decision of the General Executive Board. If so, "the charged party [could] be considered to have exhausted all internal remedies with the decision of the General Executive Board."
The evidence demonstrated that Simpson wrote a total of three letters of appeal, indicating that he had not been charged with serious misconduct, to the Local Executive Board after he was formally notified of his termination. Although the record demonstrates that the Board made a decision on September 10, 1994, Simpson was not notified of that decision until the end of October. At that time, he appealed to the Executive Board and President of the International Union.
After the International's decision, Simpson had exhausted all of his internal remedies. He did not have the option of appealing to the International Convention because the next scheduled Convention was four years away. Furthermore, the Local's bylaws stated that a member only had to attempt to exhaust internal remedies for a four-month period. Simpson did this, as he did not file a lawsuit until March 1995, six months after his termination.
Thus, as there were genuine issues of material fact as to whether Simpson had exhausted all administrative remedies prior to filing suit, the trial court properly denied the Local's request for partial summary judgment. Furthermore, after construing the evidence in the light most favorable to the Local, as the trial court was required to do in ruling on a directed-verdict motion, we hold that reasonable minds could have come to the conclusion that Simpson had exhausted all administrative remedies available to him. Accordingly, the trial court did not err in denying the motion for a directed verdict. With respect to the Local's argument that the jury's verdict was erroneous, we hold that there was competent, credible evidence supporting the jury's finding that Simpson had exhausted all of his internal remedies,[5] and, thus, the jury's verdict was not contrary to law.
 We now turn to the Local's second argument in support of its first assignment of error, which contends that the International Union was an indispensable party to this action pursuant to Civ.R. 19(A)(1). We note that this argument was only raised briefly at trial in the directed-verdict motion and was not raised in the partial-summary-judgment motion as an affirmative defense.
In addressing motions pursuant to Civ.R. 19(A), a trial court is vested with discretion in determining whether a party is necessary for a just adjudication.[6] Civ.R. 19(A)(1) states that a party is indispensable if " * * * in its absence complete relief cannot be accorded among those already parties." The Local argues that it should not have been solely responsible monetarily for the breach-of-contract claim asserting that Simpson had improperly been removed from office based on the Local's bylaws, because the International Union had upheld the termination. Although Simpson may have had claims against the International Union, the International was not indispensable in this case. The Local, as Simpson's employer, made the decision to terminate Simpson from his position as business agent, and the Local was the entity that did not adhere to its bylaws in removing Simpson from office. Accordingly, we cannot say that the trial court abused its discretion in determining that the International was not an indispensable party. Thus, with respect to this finding, the trial court did not err in denying the Local's motion for a directed verdict, nor was the jury's verdict erroneous as a matter of law. The first assignment of error is overruled.
 In its second assignment of error, the Local states that the "jury's verdict was contrary to law and prejudicial to the [Local] because [Simpson] didn't seek to appeal the International Union President's decision that his employment termination was proper, and accordingly, he had no damages resulting from his termination." Under this assignment of error, the Local argues that because it had reinstated Simpson as a business agent officer, although it had stripped him of his duties and did not pay him a salary, no damages resulted from his termination. We are unpersuaded.
 In its appellate brief, the Local, based on its theory that the position of business agent entailed dual roles, one as a salaried employee and the other as an unsalaried officer, contends that Simpson suffered no damages because it reinstated Simpson in his capacity as an unsalaried officer and properly fired Simpson as an employee. But Simpson prevailed on this claim at trial. The jury heard arguments on the Local's theory and implicitly decided that the business agent position could not be separated into two distinct roles when it decided to award Simpson damages. Because of this, we presume that this assignment of error is essentially asserting that the jury's verdict and award of damages were against the manifest weight of the evidence.
 We hold that there was competent, credible evidence supporting the jury's verdict. Two union officers testified that the business agent position could not be separated into two distinct roles, because the duties of the "employee" business agent, which included enforcing collective-bargaining agreements, were the same duties of the business agent "officer." Additionally, the bylaws listed the duties of the business agent and did not distinguish employee duties from officer duties. There was also competent, credible evidence that Simpson was improperly removed from office. The bylaws described two ways to remove a union officer from his position: (1) the officer could be voted out at the next scheduled election, or (2) charges of serious misconduct could be filed, and a hearing could be held before the Local's Executive Board, with an opportunity given to the officer to defend himself. It is undisputed that the Local did not file charges of serious misconduct against Simpson. As this evidence supported the jury's verdict that Simpson was improperly removed from office, and that his salary was improperly terminated, the jury's award of damages was not against the manifest weight of the evidence. The second assignment of error is overruled.
 In its third assignment of error, the Local contends that the trial court erred by admitting evidence that tended to show that Simpson was not afforded progressive discipline and, further, by instructing the jury that "just cause" for termination did not exist in the absence of that progressive discipline. The issue of just cause and progressive discipline was related to the other breach-of-contract claim, which was based on the merger agreement. As the jury found in favor of the Local on that claim, we hold that no prejudice was visited upon the Local by the trial court's instruction or its admission of the contested evidence. Accordingly, the third assignment of error is overruled.
 In its fourth assignment of error, the Local contends that the trial court erred by allowing the jury access to all of Simpson's exhibits throughout the course of the trial, including those not admitted into evidence, without an adequate instruction. We are unpersuaded.
 The Local and Simpson each created exhibit books for the jurors because this case involved a large number of evidentiary documents. The court instructed the jury to look only at the documents that were being discussed at a given time and not to look ahead. Further, if there was an objection to a document, the trial court heard arguments outside the presence of the jury, and if the objection was sustained, the jury's attention was never directed to that excluded document. We note that the excluded exhibits were not taken out of the exhibit books until the jury began to deliberate. The three exhibits that the Local found objectionable were withdrawn by Simpson, and, thus, the jury was never instructed to study those documents. Although the trial court did not specifically tell the jury to disregard those three exhibits, the trial court instructed the jury that they were only to consider exhibits that were introduced into evidence.
 From our review of the record, we can not say that this instruction was inadequate, considering that each exhibit book contained over fifty documents, some quite lengthy, and that the jury only had access to these books while in the courtroom during the trial. Furthermore, the jury was only given admitted exhibits to review during its deliberations. Finally, the Local did not demonstrate any prejudice by showing that a jury member looked at a document not admitted into evidence and used that document in making a decision. Accordingly, the fourth assignment of error is overruled.
 In its fifth assignment of error, the Local claims that the trial court erred by denying it due process and fundamental fairness, and by demonstrating bias against the Local and its counsel. In its first argument, the Local states that the trial court's decision to allow the jurors to keep the exhibit books with them during trial violated due process and fundamental fairness, because the jurors probably looked at the three exhibits that the Local had objected to during the trial. Those three exhibits were letters written by Simpson's counsel. The Local objected on the basis that it had not had the opportunity to cross-examine Simpson's counsel on the content of these letters. As the Local did not demonstrate that any juror looked at those three specific exhibits out of the over one hundred exhibits that were in the jury's possession during the trial, or that the jury ignored the trial court's instruction to consider only admitted testimony and exhibits, we cannot conclude that fundamental fairness or due process was denied. Additionally, as the Local prevailed on two claims submitted to the jury, and as the jury's verdict awarding Simpson damages was not against the manifest weight of the evidence, we conclude that the three exhibits at issue could not have improperly influenced the jury to such a degree that fundamental fairness was denied to the Local.
 The Local next argues that the trial court's comments to its counsel while she was cross-examining Simpson demonstrated bias against the Local. We disagree.
 The trial court's comments came in response to counsel's request for additional time to determine what questions to ask Simpson. The court replied,
 We can't wait for you. You have to have these questions prepared. I can't wait for you while you're going through your file. It's not fair to the jury or the other parties * * * It has nothing to do with being fatigued. It has to do with not being prepared. We can't wait while you page through. I've given you a lot of leeway. You've taken several hours to cross-examine this witness. I think I've been more than fair * * * I'm saying get this done now. I've now given you you've spent-seven minutes have gone by where you haven't asked a question. You're just paging page by page.
 A review of the record reveals that the trial court had been lenient with counsel and was becoming frustrated with the length of time counsel had taken to review her notes between each question. Furthermore, the court had already given counsel an extension of time for questioning prior to this incident. As the trial court has the authority, pursuant to Evid.R. 611(A), to control the mode and order of questioning a witness to "avoid needless consumption of time," we conclude that the trial court did not abuse its discretion in admonishing counsel for not being prepared and, thus, did not demonstrate bias. Moreover, as the jury found in favor of the Local on two of the three claims at issue, the trial court's comments to the Local's counsel do not appear to have biased the jury against the Local.
In its third example of bias, the Local refers to the statements the trial court made to the jury after Simpson had called Newsome, an officer of the Local, to testify in regard to the defamation claim. The court explained to the jury that in a civil trial a defendant may be required to take the stand by a plaintiff, whereas, in a criminal case, the defendant has constitutional protections and does not have to take the stand and testify. The trial court then explained that Simpson's counsel would question Newsome as if Newsome was being cross-examined. The Local argues that these comments associated the Local with criminal defendants and biased the Local. We conclude that these statements did not bias the Local or its counsel, particularly in light of the fact that the jury found in favor of the Local on this claim. Accordingly, the fifth assignment of error is overruled.
In its sixth assignment of error, the Local contends that the trial court erred in its award of attorney fees, and in setting the amount of the fees. We are constrained to agree.
The general, or American, rule, firmly established in Ohio, states that a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authorization or upon a finding of conduct that amounts to bad faith.[7] Here, there was no statutory authority that would have justified an award of attorney fees, nor was there any evidence of bad faith.
Simpson contends that the case sub judice is analogous to Channell v.N.C.R. Employees' Independent Union.[8] In Channell, the Second Appellate District upheld an award of attorney fees to a union officer who was wrongly removed from his office. The court ordered that the officer be reinstated to his office after finding that he had suffered "irreparable injury and [was] without an adequate remedy at law."[9] It appears that the union officer in Channell had not filed a breach-of-contract claim seeking damages, as did Simpson, but rather had sought an equitable remedy. Furthermore, although the Channell court did not explicitly find that there was bad faith on the part of the union in ousting the officer, the statements of the trial court, relied upon by the appellate court in upholding the award of attorney fees, implied that the union's action was undertaken in bad faith. There is no bad faith or malice evident in the case at bar. Accordingly, we decline to applyChannell to the circumstances of this case.
Next, Simpson maintains that the award of attorney fees was consistent with the decisions of federal courts that follow the "common benefit" exception to the American Rule. This exception provides that when a union member's successful litigation confers a substantial benefit on all union members, an award of attorney fees is justified to prevent the unjust enrichment of the other union members at the plaintiff's expense.[10]
But this exception is specifically followed only in cases where the party has prevailed on a claim based on a federal labor statute and for the purpose of enforcing the policies underlying that specific statute. Although the contract here was a labor union's bylaws, the case still involved merely a standard breach-of-contract claim seeking ordinary damages, and it did not include a claim under federal labor law. Under these circumstances, this exception to the American rule was unavailable for Simpson. Accordingly, we are constrained to reverse the award of attorney fees and sustain the sixth assignment of error.
In its seventh assignment of error, the Local contends that the trial court erred in awarding prejudgment interest, and in setting the amount of that interest. We sustain this assignment of error, but not for the reasons asserted by the Local.
The court's journal entry, dated December 21, 2000, awarded Simpson "$26,834.97 in prejudgment interest running from date of judgment of September 6, 2000." As a matter of law, prejudgment interest may not be awarded from the date of judgment on the merits. Prejudgment interest runs from the accrual of the claim until the date of the judgment on the merits of the claim.[11] Accordingly, we vacate the award of prejudgment interest and remand to the trial court to make findings of fact on the record as to the accrual date of Simpson's claim and to calculate any prejudgment interest that may be owed to Simpson.
We note that the court's journal entry could also be interpreted as having attempted to award post-judgment interest, as it did award interest from the date of the final judgment. If that was the court's intention, we instruct it to calculate the post-judgment interest pursuant to R.C. 1343.03(A). That statute, providing a rate of ten percent per annum for post-judgment interest, entitles a party receiving a definite money judgment, such as Simpson, to post-judgment interest upon that award automatically.[12] Accordingly, the seventh assignment of error is overruled.
In sum, we affirm the judgment of the trial court to the extent that Simpson was awarded damages for breach of the Local's Constitution and bylaws, but we reverse the award of attorney fees. We also vacate the award of prejudgment interest and remand this cause to the trial court for further proceedings on the issue of entitlement to prejudgment interest in accordance with the terms of this decision.
Judgment affirmed in part and reversed in part, and cause remanded.
Painter and Shannon, JJ., concur.
Raymond E. Shannon, retired from the First Appellate District, sitting by assignment.
[1] Any reference to the Local's bylaws necessarily includes a reference to the International Union's Constitution, as all of its provisions were adopted and incorporated into the Local's bylaws.
[2] Simpson v. Bakers/Local No. 57, Bakery, Confectionery TobaccoWorkers Internatl. Union, AFL-CIO CLC (May 1, 1998), Hamilton App. No. C-960517, unreported.
[3] Simpson was originally the chief elected officer of Local 213. Local 213 merged with Local 57, pursuant to a "Merger Agreement" in May 1994. The merger agreement stated that Simpson would become the business agent of the Local and that his term would expire January 31, 1996.
[4] This amount included back pay and benefits from August 17, 1994, the date of Simpson's wrongful termination, to January 31, 1996, the date his term as business agent expired under the Merger Agreement.
[5] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
[6] See Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179,465 N.E.2d 1298.
[7] See Sorin v. Bd. of Edn. (1976), 46 Ohio St.2d 177, 347 N.E.2d 527;Leis v. Truck Drivers, Chauffeurs Helpers Local Union No. 100 (Oct. 21, 1999), Hamilton App. No. C-981011, unreported.
[8] (1971), 28 Ohio App.2d 260, 277 N.E.2d 85.
[9] Id. at 262, 277 N.E.2d at 86.
[10] See Hall v. Cole (1973), 412 U.S. 1, 93 S.Ct. 1943.
[11] United States Playing Card Co. v. The Bicycle Club (1997),119 Ohio App.3d 597, 695 N.E.2d 1197.
[12] Wilson v. Smith (1993), 85 Ohio App.3d 78, 619 N.E.2d 90; see, e.g. Testa v. Roberts (1988), 44 Ohio App.3d 161, 542 N.E.2d 654.