Defendant-appellant, Claudia Burg, appeals from a verdict in the Butler County Probate Court finding her guilty under R.C. 2109.52 of wrongfully concealing, embezzling, or conveying assets of the estate of her mother, Emma Marshall. Appellant also appeals the probate court's order overruling her objections to the inventory and appraisal of Marshall's estate. We affirm.
Appellant lived with Marshall for approximately four years as an adult. During this time, appellant assisted Marshall with her personal affairs, including cashing checks, paying bills, and buying groceries. In September 1995, appellant and Marshall went to the Mid-First Credit Union to refinance Marshall's home to make repairs on the home. Appellant co-signed the note, making herself equally responsible with Marshall for the entire mortgage. Before the refinancing, Marshall had a mortgage of approximately $19,000. The house was refinanced for $29,939.09, leaving $10,028.91 for repairs.
Appellant claimed that when the workers arrived to begin repairs on the house, other family members refused to let the workers into the house. Appellant claimed that she asked Marshall what she should do with the $10,028.91 and Marshall told appellant to "do whatever you want to do if you need the money, use it."
On March 4, 1996, Marshall was declared incompetent and her daughter, Jacquelyn Anderson,[1] sister of appellant and daughter of Marshall, was appointed guardian for Marshall's person and estate. Anderson, acting as guardian of Marshall, asked appellant to put the $10,028.91 into a bank account and to not use the money until the guardianship estate was settled. Appellant refused to comply with Anderson's request and when asked by Anderson to return the money to the guardianship estate, was unable to account for the loan proceeds. Anderson brought this action in June 1996, under R.C. 2109.50 et seq., claiming that appellant had exerted undue influence over Marshall and had used her position of trust to coerce her mother into taking the home equity loan. Anderson further claimed that appellant had concealed or misused Marshall's Social Security and Veteran's Administration checks.
In a separate action, appellant filed objections to the estate inventory filed by Anderson. The probate court held a joint hearing on the concealment claims and on the objections to the inventory on August 28, 1996, which hearing was continued until September 11, 1996 and then further continued until September 18, 1996. Following the hearing, the probate court found appellant guilty of concealing $5,500 of the money from the home equity loan and ordered appellant to reimburse the guardianship estate $5,500 with a ten percent penalty pursuant to R.C. 2109.52. The probate court found appellant not guilty of concealment as to the Social Security and Veteran's Administration checks and overruled appellant's objections to the estate inventory. Appellant asserts two assignments of error on appeal.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN RULING THAT APPELLANT HAD A CONFIDENTIAL RELATIONSHIP WITH THE WARD AND/OR EXERTED UNDUE INFLUENCE OVER THE WARD AND ORDERING THE REIMBURSEMENT OF $5,500, ALL OF WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant presents three separate issues for our review in her first assignment of error: (1) the trial court erred in finding that appellant had a confidential relationship with and/or exerted undue influence over Marshall; (2) the trial court erred in finding her guilty of concealment of $5,500; and (3) the trial court's finding of guilty was against the manifest weight of the evidence.
 I.
The trial court found that appellant was in a fiduciary relationship with her mother and based on that fiduciary relationship, a rebuttable presumption arose that any gift was the product of undue influence. Undue influence generally involves the abuse of a fiduciary relationship between the wrongdoer and the victim "whereby the will of the person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." Marich v. Knox Cty. Dept. of Human Services (1989), 45 Ohio St.3d 163, 166.
A fiduciary relationship is one in which special confidence and trust is placed in the integrity and fidelity of another, who acquires a resulting position of superiority or influence by virtue of this special trust. Stone v. Davis (1981), 66 Ohio St.2d 74,78. The person who occupies a fiduciary relationship to another acts as an agent for the other and owes him the utmost loyalty and honesty. Testa v. Roberts (1988), 44 Ohio App.3d 161,165.
In a fiduciary relationship, the person who holds the power bears the burden of proof of the fairness of a transaction between the agent and principal. Id. at 166. Appellant contends that Marshall intended the $10,028.91 to be a gift for all that appellant had done for Marshall. The elements of a valid inter vivos gift requires proof of the following: (1) the donor must intend to make an immediate gift of the property, (2) the donor must deliver the property to the donee or a third person as trustee for the donee and (3) the donor must relinquish all dominion and control of the property. Streeper v. Myers (1937),132 Ohio St. 322, paragraph one of the syllabus. If any one of the elements is absent, the gift fails. Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, 30-31.
The burden of establishing that a gift has been made is on the donee by clear and convincing evidence. In re Estate of Fife (1956), 164 Ohio St. 449, 456. However, while the "existence of a family relationship gives rise to the presumption of a gift in cases such as this one which the family members are also in a fiduciary relationship, the family gift presumption yields to the more specific presumption of undue influence which arises in fiduciary relationships." The Matter of Blumetti (Jan. 14, 1994), Trumbull App. No. 92-T-4752, unreported. Furthermore, "where a confidential relationship exists between a donor and a donee, the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee." Studniewski v. Krzyanowski (1989), 65 Ohio App.3d 628,632. In such cases, a presumption of undue influence arises and the burden of going forward with evidence shifts to the donee to show that his conduct was free of undue influence or fraud and that the donor acted voluntarily and with a full understanding of his act and its consequences. The donee may rebut the presumption of undue influence by a preponderance of the evidence. Id. at 630.
In the case at bar, the trial court found that appellant "had a very special relationship with her mother. She helped her with her finances. She helped her pay her bills. And that type of relationship creates a legal situation in what this Court finds to be a confidential relationship, or a fiduciary relationship." Based on our review of the record, we conclude that the trial court did not err in finding that a fiduciary relationship existed between appellant and Marshall. The trial court found that there was credible evidence to support the allegation that Marshall trusted appellant with her financial affairs. Consequently, appellant had the burden of going forward with evidence to show that her conduct did not involve undue influence and that Marshall acted voluntarily and with a full understanding of her act and its consequences.
The trial court found, and we agree, that appellant has not met her burden of proving that no undue influence was present when Marshall told appellant to keep the $10,028.91 and to use it for her own benefit. Appellant presented no evidence, other than the aforementioned conversation, that Marshall intended the $10,028.91 to be an inter vivos gift to appellant. Accordingly, we find that the trial court did not err in finding that appellant failed to rebut the presumption that appellant had exerted undue influence over Marshall with respect to the gift of $10,028.91. However, while the trial court found that the inter vivos gift must fail, the court found appellant responsible for repayment of only $5,500 of the $10,028.91, leading us to appellant's second issue, the finding of guilty of concealment.
 II.
The concealment action against appellant was pursued under R.C. 2109.50 et seq. The purpose of R.C. 2109.50 is to provide a speedy and effective method of discovering assets belonging to the estate and securing their recovery. Ukrainiec v. Batz (1982),24 Ohio App.3d 200, 202. R.C. 2109.50 provides in pertinent part:
 Upon complaint made to the probate court of the county having jurisdiction of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel a person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.
The statute is not intended as a substitute for a civil action to collect a debt, obtain an accounting, adjudicate rights under a contract or recover judgment for money owing an executor or administrator. Ukrainiec v. Batz, 24 Ohio App.3d 200. Although the acts which form the basis of an R.C. 2109.50 claim are criminal acts, the proceeding itself is quasi-criminal. Id. The proceeding is quasi-criminal because the liability sought to be imposed is civil only. Id. Pursuant to R.C. 2109.52, if found guilty, the probate court shall render judgment "against the person found guilty, for the amount of the moneys or the value of the chattels or choses in action concealed, embezzled, conveyed away, or held in possession, together with a ten percent penalty and all costs of such proceedings or complaint."
Furthermore, it is not necessary to prove the culpable mental state required to find the defendant criminally liable for the offense that forms the basis of a concealment claim. In re Estate of Popp (1994), 94 Ohio App.3d 640. The complainant need only show by a preponderance of the evidence that the defendant received money or other assets of an estate claimed to have come into her hands and that she concealed, embezzled or conveyed it away. In re Woods Estate (1959), 110 Ohio App. 277. The nature of the transaction by which a defendant obtains possession of an asset is not dispositive of a claim under R.C. 2109.50. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400. "Instead, the inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." Id. at 407.
Additionally, wrongful or culpable conduct on the part of the person accused is an element of the offense, which must be proven by a preponderance of the evidence. Ukrainiec at 202. A prima facie case of concealment may be rebutted and overcome by clear and convincing evidence that the decedent made an inter vivos gift of the assets to the suspected person. In re Estate of Fife (1956), 164 Ohio St. 449. Prima facie evidence is evidence which "will support, but not require, a verdict in favor of the party offering the evidence." Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,64. Clear and convincing evidence is defined as that measure or degree of proof which "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Schiebel (1990), 55 Ohio St.3d 71,74.
At the three hearings held on this matter, appellant presented conflicting testimony attempting to account for the $10,028.91. At the hearing held on January 17, 1996, appellant testified that she had spent approximately $1,000 on a loan to her son, $1,500 on bathroom fixtures for the house, $1,000 for a washer and dryer purchased for the home, $300 for paint for the house and the remainder for the care and entertainment of Marshall, for a total of approximately $4,500. Appellant further testified that the remaining $5,500 had been placed into her son's bank account. When asked why appellant did not open up a savings account to put the money in she replied that "I didn't want to." When asked whom she felt the $5,500 belonged to she replied that it belonged to herself and her mother and that she was still planning to use the money to repair the house.
At the hearing held on September 11, 1996, appellant testified that she had spent $6,000 — 7,000 on Marshall's care and entertainment, $1,000 was used to purchase a washer and dryer for Marshall, and approximately $2,000 — $3,000 was used for appellant's daughter's educational needs.
Finally, at the hearing on September 18, 1996, appellant was questioned as to the conflicting testimony regarding how the $10,028.91 was spent. Appellant changed her testimony again, and stated that she had returned the bathroom fixtures and received the $1,500 back and that she had received the $300 back from the painting. Appellant further testified that while she had deposited $5,500 in her son's bank account, she had withdrawn most of that money to use for Marshall's care and entertainment.
In the case at bar, the trial court found that appellant had concealed $5,500 from Marshall's estate. The preponderance of the evidence supports the trial court's finding that appellant concealed at least $5,500 of the proceeds from the refinancing of Marshall's home. Notwithstanding appellant's conflicting testimony as to how much of the $10,028.91 was spent on Marshall's care and entertainment, the trial court found that appellant could not account for $5,500 of the loan proceeds. Furthermore, appellant's action of placing the $5,500 into her son's bank account was wrongful as this action concealed and served to withhold the money from the guardianship estate.
Additionally, appellant's continued possession of the $5,500 after Marshall was declared incompetent and a guardianship was established was improper. Anderson, acting as guardian, had asked appellant to put the entire $10,028.91 into a bank account until the guardianship estate was settled. Appellant refused to do this and instead concealed and withheld at least $5,500 from the guardianship estate.
Appellant asserts that Marshall gave her the $10,028.91 as a gift. However, as stated, in order to establish an inter vivos gift, appellant must prove that Marshall intended to transfer title and right of possession to appellant and delivery the property. The evidence fails to establish that Marshall intended to transfer title and right of possession of the $10,028.91 to appellant. Based on our review of the record, we determine that the trial court had sufficient evidence upon which to conclude that Marshall had not made an inter vivos gift to appellant of the $10,028.91 and that the trial court did not err in finding appellant guilty of impermissibly concealing or withholding $5,500 from Marshall's estate.
 III.
Appellant's third issue contends that finding her of guilty of concealment was against the manifest weight of the evidence. A reviewing court will not reverse a judgment of a trial court as being against the manifest weight of the evidence where the judgment is supported by competent, credible evidence, as in the case at bar. Vogel v. Wells (1991), 57 Ohio St.3d 91, 96. Based on our discussion of appellant's second issue, the finding of guilty of concealment is supported by competent, credible evidence. Appellant's first assignment of error is not well-taken and is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT OVERRULED THE APPELLANT'S OBJECTIONS TO THE INVENTORY AND APPRAISAL.
A hearing on exceptions to an inventory filed under R.C.2115.16 is a summary proceeding conducted by the probate court to determine whether those charged with the responsibility have included in an estate more or less than the person owned at the time the estate was created. In re Estate of Gottwald (1956),164 Ohio St. 405, paragraph one of the syllabus. Appellant claimed that various items in the inventory were valued too low and that several items were missing from the inventory, including a mink coat and a diamond ring. The probate court noted that there was conflicting testimony as to the value of the items in the inventory and also as to whether Marshall owned the items which were allegedly missing from the inventory. The probate court determined that appellant had not met her burden to show that the value of the items in the inventory were too low, nor had she presented evidence proving that Marshall had owned the items which were allegedly missing from the inventory.
Upon review of a trial court findings on exceptions to an estate inventory, this court utilizes an abuse of discretion standard. In re Guardianship of Maurer (1995), 108 Ohio App.3d 354,360. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The trial court heard conflicting evidence from family members, including appellant and Anderson, as to Marshall's possessions. The trial court overruled the objections to the inventory, finding that the testimony presented by Anderson was the most credible regarding what property was owned by Marshall at the time the guardianship estate was established.
We have reviewed the record and find no abuse of discretion on the part of the trial court in approving the inventory as filed by the guardian. Anderson presented credible testimony that the inventory as filed was correct and that Marshall did not presently own the items allegedly missing from the inventory. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] A notice of cross-appeal was filed by Anderson, however, no brief was filed by Anderson.