[Cite as *State v. C.A.*, 2015-Ohio-3437.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio [and City of Columbus], | : | |
| | | No. 14AP-738 |
| Plaintiffs-Appellants, | : | (M.C. No. 2013CRX-52261) |
| | | and |
| v. | : | No 14AP-746 |
| | | (M.C. No. 2013CRX-52260) |
| [C.A.], | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 25, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*; *Richard C. Pfeiffer, Jr.*, City Attorney, and *Melanie R. Tobias* for appellants.

*Tim Pirtle*, for appellee.

APPEALS from the Franklin County Municipal Court

BRUNNER, J.

{¶ 1} Plaintiffs-appellants, the State of Ohio and the City of Columbus, appeal a decision of the Franklin County Municipal Court that sealed records relating to case Nos. 2012 CRB 13537 and 2012 CRA 13538. The state and city argue that sealing the records of these cases is not permitted by statute and that the municipal court abused its discretion in ordering the records sealed. We find the statute does permit sealing these records, and the municipal court acted within its discretion in crediting the testimony of defendant-appellee, C.A., and reaching the conclusion that sealing the records was permissible. We therefore affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} We have previously set forth the background of this case as follows:

On May 30, 2012, an officer of the Ohio State Patrol issued numerous citations to appellee in the course of a traffic stop, including speeding and operating a vehicle while intoxicated ("OVI"), in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. The officer also cited appellee for four drug-related offenses.

The most serious of the four drug-related charges was one charging appellee with the offense of aggravated possession of drugs (heroin), in violation of R.C. 2925.11(C)(1), a felony of the fifth degree (case No. 2012 CRA 13538). On May 31, 2012, the day after her arrest, the state amended the charge to attempted possession of drugs, a misdemeanor of the first degree. The case was assigned to a specialty docket program of the Franklin County Municipal Court. Appellee pleaded guilty to the amended charge. From the bench, the court ordered appellee to pay a fine and serve a 180–day sentence, to be suspended during a one-year period of community control. Appellee thereafter participated in and successfully completed the one-year specialty program administered by the court. On August 1, 2013, the court dismissed the attempted drug-possession charge because appellee successfully completed the specialty program.

The remaining three drug-related charges, all misdemeanors, were prosecuted by the Columbus City Attorney in Municipal Court case No. 2012 CRB 13537. Those charges were possession of drug paraphernalia (smoking bowl), in violation of R.C. 2925.14(A)(9), possession of a drug abuse instrument (syringe), in violation of R.C. 2925.12(A), and possession of marijuana, in violation of R.C. 2925.11(C)(3). The court ultimately dismissed these charges.

The charges of operating a vehicle while intoxicated ("OVI") and speeding proceeded in a third case, Municipal Court case No. 2012 TRC 146198. On July 23, 2012, appellee pleaded guilty to a first offense of OVI; the court ordered a fine of $375 and sentenced appellee to 180 days in jail, with three days of jail time credited for time served. The remaining 177 days were suspended pending successful completion of probation. The court dismissed the speeding charge.

In summary, on May 30, 2012, appellee was cited for speeding, OVI, and four drug-related offenses, three of which were initially charged as misdemeanors, and one of which was later amended from a felony to a misdemeanor. The court

> ultimately dismissed all four of the drug-related charges. Appellee was also convicted and sentenced for OVI.

(Footnote deleted.)  *State v. C.A.*, 10th Dist. No. 13AP-982, 2014-Ohio-2621, ¶ 2-6.

{¶ 3}  On August 22, 2013, leading up to our previous decision in *C.A.*, C.A. filed two applications, pursuant to R.C. 2953.52, seeking that the trial court seal the records of the two cases involving the four drug-related charges.  *Id.* at ¶ 7.  C.A. never sought to seal the record of her OVI case.  *Id.*  On October 29, 2013, the trial court held a hearing on C.A.'s applications and, over objections of both the state and city, ordered the sealing of the records related to the drug cases, Nos. 2012 CRB 13537 and 2012 CRA 13538.  *Id.* at ¶ 8.

{¶ 4}  Both the state and city appealed.  They argued that OVI convictions are not able to be sealed and that, when a person is charged with other offenses "as a result of or in connection with" the non-expungeable offense, those other offenses are also not able to be sealed.  *Id.* at ¶ 10-14.  We concluded, based on the caselaw and the then-existing statutes (some of which have since been modified), that the trial court had not considered whether the drug charges were a "result of" or "in connection with" the OVI.  *Id.* at ¶ 15-19.  Accordingly, we reversed and remanded to the trial court with instructions to the trial court to make that determination.  *Id.* at ¶ 20.

{¶ 5}  On remand, on August 19, 2014, the trial court held a hearing at which it heard testimony from C.A. about the facts underlying the OVI and the other alleged offenses.  C.A. testified that at the time of the OVI she was living out of her car and kept her drug paraphernalia there along with the rest of her belongings.  She explained that her drug and drug paraphernalia charges were based on heroin residue in a syringe, the syringe itself, a smoking bowl, and some marijuana, all of which were found in her car. She admitted that, at the time she was arrested, there were (and apparently still are, despite the fact that at the time of the hearing she had been sober for over one year) marks from frequent injections on her arms.  She also stated that, because she had just gotten off work at Centerfold at 2:00 a.m., her eyes probably were bloodshot and glassy when the officer pulled her over.  She additionally confessed that at the time of the OVI she was a daily drug user.  Thus, some indeterminate amounts of drugs were surely in her system at the time she was pulled over.  However, C.A. testified that she was not under the

influence at the time the police stopped her. She explained that she had just gotten off work and had not used drugs or alcohol in over ten hours. C.A. admitted that she pled guilty; but, she testified that she pled guilty not because she actually was guilty of the OVI, but because she felt, given the strength of the evidence against her and the other benefits of the plea negotiation, that it was in her best interest to plead guilty. Essentially, she testified that her guilty plea was actually an *Alford* plea.[1]

{¶ 6} The trial court then reasoned as follows:

> * * * I happen to believe that if [C.A.] was under the influence of heroin at the time, it would be a much more difficult case * * *.
>
> It's quite interesting when you put all this together. She was speeding -- is the reason that she got stopped. And speeding is not an indication of impairment. So right off the bat you have no indication of impairment. She -- What she is denying is she was impaired, not that we can go back and set aside any guilty pleas or try to go back and do anything. This isn't a motion to reopen that case or anything like that. This is an expungement hearing.
>
> But these facts are all very important. You know, the officer wrote "track marks," admission -- It says admission after heroin use, comma, admission. I'm going to assume that that means she admitted to using heroin. She's saying she did use heroin that day; however, it had been ten hours earlier and she was in no way under the influence of heroin at the time she was pulled over at 2:30 in the morning. She worked on her feet at the dance club for a long -- long hours. She explains her poor coordination, glassy eyes, red bloodshot eyes on that. Everyone knows that two clues on an HGN is relatively insignificant with regard to impairment with regard to alcohol.
>
> So let's get into some of the testimony today.
>
> * * * [D]aily heroin use does not make her guilty of impairment just as daily alcohol use doesn't automatically make someone guilty of operating a vehicle under the influence of alcohol. She admitted she would test positive, based on the length of time that marijuana and heroin stay in the human body. We all know that that's true as well.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

I have to also, in my decision, judge the credibility of the witness. And I enjoy doing that after 11 years; it provides me with a great deal of insight into many of these cases that we handle down here. And I have to say that I found [C.A.] to be a very credible witness today in regards to all the facts and circumstances surrounding this. She, with candor, admitted to many things which I'm sure she finds embarrassing with regard to what she was doing, how she was living, where she was working, and that that had a stigma associated to it then.

And I'm sure in a courtroom full of people with a court reporter taking a record, that it's difficult to say those things. But she did come in and say them with regard to what was going on at the time. And so that, combined with the way she comported herself and her memory, her frankness, and her --

(Cell phone interruption.)

So based on all the -- the way the rules for me to judge the credibility of a witness are, I find you [addressing C.A.] to be extremely credible with regard to when you last used, whether or not you were under the influence, why you've done what you've done.

The circumstances surrounding the stop to begin with, whether or not heroin was the drug that -- whether you were under the influence of that or not, we really don't have any evidence, or much evidence * * *.

So, therefore, putting all this together, I find that there is no commonality of acts between the misdemeanor and felony criminal charges that you were charged with and the OVI conviction. Therefore, I'm going to order that all those criminal charges be subject to sealing and that there is no legitimate State interest that outweighs your -- outweighs your interest to have these things expunged. So I'm going to order them to be sealed * * *.

(Tr. 38-42.)

{¶ 7}   The trial court, in an order dated August 21, 2014, adopted the reasoning it had orally expressed at the hearing and again ordered the records relating to case Nos. 2012 CRB 13537 and 2012 CRA 13538 sealed.  The state and city have once again appealed.

## II. ASSIGNMENTS OF ERROR

{¶ 8}  In their joint brief, appellants advance two assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN GRANTING THE APPLICATION TO SEAL THE RECORDS OF TWO CASES, WHERE THE APPLICATIONS WERE BARRED BY R.C. 2953.61.
>
> [II.] THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE APPLICATION, AS THE ORDER NECESSARILY REQUIRES NON-SEALABLE RECORDS TO BE SEALED.

## III. DISCUSSION

{¶ 9}  Sealing records in Ohio is a two-step process.  In the first step, a trial court is called on to determine if a person is eligible.  The specific requirements for eligibility vary depending on whether a person is seeking to seal records of convictions and bail forfeitures or records relating to cases ending in "not guilty" findings, dismissals, and "no bill" verdicts.  *Compare* R.C. 2953.32 *with* 2953.52.  Where, as here, an applicant seeks to seal records relating to dismissed cases, the eligibility determination involves whether the cases have indeed been dismissed (either with prejudice, or if without prejudice, whether the statute of limitations has expired), whether other criminal proceedings are pending against the applicant, and whether the dismissed cases were brought "as a result of or in connection with the same act" as a case resulting in a different disposition which is not (or not yet) eligible for consideration of sealing its records.  R.C. 2953.52(B)(2)(a) and (b); 2953.61(A).  A court lacks jurisdiction to seal records when an applicant is not an "eligible offender."  *State v. Dominy*, 10th Dist. No. 13AP-124, 2013-Ohio-3744, ¶ 6.  Whether an applicant is an eligible offender is an issue that we review de novo (although, if factual findings are a necessary predicate to applying the law regarding eligibility, we review those for abuse of discretion).  *State v. Tauch*, 10th Dist. No. 13AP-327, 2013-Ohio-5796, ¶ 7; *see also Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 36-38 (reviewing an arbitration clause de novo but affording the supporting factual findings of the trial court "great deference"); *In re K.J.*, 10th Dist. No. 13AP-1050, 2014-Ohio-3472, ¶ 18 (applying a hybrid standard of review to R.C. 2953.61 and according deference to the factual findings of the trial court).

{¶ 10} Once an applicant has been found to be an eligible offender, the statutes require a court to use its discretion to weigh a number of factors that vary, depending on whether the person seeks to seal records of convictions and bail forfeitures or records relating to arrests and cases ending in dismissal, "not guilty" findings, or "no bill" verdicts. *Compare* R.C. 2953.32 *with* 2953.52.  In a case such as this, where an applicant seeks to seal records relating to dismissed cases, the court is to "consider the reasons against granting the application specified by the prosecutor in the objection" (if the prosecutor objected) and then "[w]eigh the interests of the person in having the official records pertaining to the case sealed against the legitimate needs, if any, of the government to maintain those records."   R.C. 2953.52(B)(2)(c) and (d).   We review a trial court's determination on these issues for abuse of discretion.  *Tauch* at ¶ 17.

{¶ 11} If the trial court finds that a person is eligible and, using its discretion, determines that the facts supporting the other required findings should be construed to favor sealing the records of conviction, the trial court "*shall* issue an order directing that all official records pertaining to the case be sealed."   (Emphasis added.)   R.C. 2953.52(B)(4).  *See also* R.C. 2953.32(C)(2) ("*shall* order all official records of the case that pertain to the conviction or bail forfeiture sealed."   (Emphasis added.)   Once the jurisdictional requirements and discretionary factors are met, a trial court is without authority to refuse to grant an expungement.  Moreover, the sealing statutes are remedial and are, therefore, to be construed liberally to promote their purpose and assist the parties in obtaining justice.  *State ex rel. Gains v. Rossi*, 86 Ohio St.3d 620, 622 (1999), citing R.C. 1.11; *Barker v. State*, 62 Ohio St.2d 35, 42 (1980).

{¶ 12} In the instant case, appellants challenge the trial court's decision to order records in C.A.'s cases sealed on both the jurisdictional and discretionary factors.

## A. First Assignment of Error – Whether the Trial Court Lacked Jurisdiction to Grant C.A.'s Applications Because of R.C. 2953.61

{¶ 13} R.C. 2953.32(A)(1) allows records of certain misdemeanor and felony convictions to be sealed (provided the other provisions of the statute are met) either one or three years, respectively, "after the offender's final discharge."  R.C. 2953.52 allows for the immediate sealing of records related to any charges after a dismissal with prejudice

(or without prejudice if the statute of limitations has run). Former R.C. 2953.61[2] describes what to do when these statutes coincide. Former R.C. 2953.61 prevents immediate sealing of dismissed charges that were brought "as a result of or in connection with the same act" as a case that cannot yet be sealed under R.C. 2953.32(A)(1) and (2). For example, if a person is charged with robbery and then theft arising from a single act of stealing and is convicted of theft but the robbery case is dismissed, the person cannot apply under R.C. 2953.52 to seal the records of the dismissed robbery case until the theft conviction is eligible to be sealed under R.C. 2953.32.

{¶ 14} However, R.C. 2953.36(B) provides that OVI convictions cannot ever be sealed. Thus, if the other charges that C.A. wishes to seal arose "as a result of or in connection with the same act" that gave rise to her OVI conviction, former R.C. 2953.61 would operate to prohibit her from seeking to seal those charges until the OVI is eligible to be sealed, which is to say, never. As the Supreme Court of Ohio stated:

> A trial court is precluded, pursuant to R.C. 2953.61, from sealing the record of a dismissed charge if the dismissed charge arises "as the result of or in connection with the same act" that supports a conviction when the records of the conviction are not sealable under R.C. 2953.36, regardless of whether the charges are filed under separate case numbers.

*State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, syllabus.[3] Thus, the relevant inquiry is whether the dismissed drug charges "arose as a result of or in connection with the same act" as C.A.'s OVI conviction. *C.A.* at ¶ 17.

{¶ 15} Appellants recognize that we are to accord deference to the trial court's exercise of discretion in determining the credibility of witnesses and making factual determinations. *See Taylor Bldg. Corp.* at ¶ 37 (affording the factual findings of the trial court "great deference"); *Testa v. Roberts*, 44 Ohio App.3d 161, 165 (6th Dist.1988) (affording a trial court's judgments on credibility "the utmost deference"). Nonetheless, appellants urge us to find that the trial court here erred when it credited C.A.'s testimony

---

[2] We refer to the edition of R.C. 2953.61 that was effective at the time these cases were filed.

[3] Former R.C. 2953.61 was amended, effective September 19, 2014, to abrogate this ruling to a certain extent. That is, R.C. 2953.61(B) (as amended) explicitly allows the sealing of one otherwise ineligible offense if it was charged "as a result of or in connection with the same act" as gave rise to sealable offenses. However, even under this expansion, OVI convictions are still not able to be sealed (excluding convictions under sections R.C. 4511.19 and 4511.194 or any substantially similar municipal ordinance).

and ordered that her records be sealed. For C.A. to have been eligible to have her records of dismissals of the drug charges sealed, the trial court was required to have found that the dismissed drug charges did not arise "as a result of or in connection with" her OVI conviction to which she pled guilty. C.A. claims that she actually did not drive while under the influence of heroin or marijuana. Appellants argue that the trial court was not free to believe C.A.'s assertion that she did not drive while under the influence because C.A. pled guilty to OVI.

{¶ 16} Appellants are right to point out that a guilty plea "is a complete admission of the defendant's guilt" and, as such, "embrace[s] not only the discrete acts alleged, but the totality of the substantive conduct involved in committing the crime." (Appellants' Brief, 13, quoting Crim.R. 11(B)(1); *State v. Ninness*, 6th Dist. No. OT-11-024, 2013-Ohio-974, ¶ 15; *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 16 (6th Dist.), citing *State v. Reed*, 10th Dist. No. 05AP-335, 2005-Ohio-6251, ¶ 16.) However, that observation about the finality of a plea in the criminal case does not resolve the question of how to treat a guilty plea in a subsequent expungement or sealing proceeding.

{¶ 17} "Expungement is a civil proceeding." *State v. Hutchen*, 191 Ohio App.3d 388, 2010-Ohio-6103, ¶ 6 (2d Dist.), citing *State v. Milanovich*, 42 Ohio St.2d 46, 49 (1975); *State v. Londrico*, 8th Dist. No. 38174 (Dec. 28, 1978). In Ohio, guilty pleas are not generally given preclusive effects in subsequent civil actions:

> Neither a plea of guilty in a criminal prosecution, nor the judgment founded upon it, are conclusive against the defendant in a civil action.
>
> Such plea stands like any other confession of a party, and may be controverted.

*Clark v. Irvin*, 9 Ohio 131 (1839), syllabus; *Allstate Ins. Co. v. Cartwright*, 2d Dist. No. 15472 (June 27, 1997) (showing the continuing vitality of *Clark*).[4] We point out that evidence of C.A.'s guilty plea is not to be excluded as hearsay and could be admitted "to prove any fact essential to sustain the [criminal] judgment." Evid.R. 803(22). However,

---

[4] We acknowledge that in some prior cases we have used guilty pleas in the underlying criminal cases to establish constituent facts for the purposes of determining eligibility for expungement. *See, e.g., State v. Menzie*, 10th Dist. No. 06AP-384, 2006-Ohio-6990; *State v. Reed*, 10th Dist. No. 05AP-335, 2005-Ohio-6251. However, those cases do not present the issue presented here, whether the trial court hearing the expungement could credit evidence offered in the expungement hearing that contradicts the facts elicited upon the plea hearing.

the *admissibility* of such evidence does not speak to the *sufficiency* of it. Ohio law considers guilty pleas in a subsequent civil case as equivalent to any other confession evidence, evidence that may be explained or rebutted, not res judicata. *See Phillips v. Rayburn*, 113 Ohio App.3d 374, 381 (4th Dist.1996) (superseded with regard to violent felonies by R.C. 2307.60(A)(2)), quoting *Hickman v. Kraft*, 4th Dist. No. 84 CA 2 (Sept. 26, 1985), citing 1 Weissenberger, *Ohio Evidence*, section 803.254 (1985) and sections 803.256, 803.258 (1996) (" 'Evidence offered pursuant to Evid.R. 803(2[2]) is not conclusive of the fact sought to be proved, and the opponent may explain the prior conviction and may offer any evidence rebutting the fact sought to be proved by the proponent.' ").

{¶ 18} One might argue that, notwithstanding the law discussed above, issues which were "actually litigated and determined" in a prior action may not be again drawn into controversy between the same parties. *See*, *e.g.*, *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994), paragraph two of the syllabus. However, a guilty plea is not a decision or verdict by a jury or court that follows a trial or other fully litigated issue, such as a decision on summary judgment. It is rather, as appellants have pointed out, an "admission of the defendant's guilt." (Appellants' Brief, 13, citing Crim.R. 11(B).) It is an admitted or stipulated fact upon which a decision finding a party guilty is based. "[A] fact stipulated in a prior action was not actually litigated, as required to invoke the doctrine of issue preclusion in a subsequent action." *State ex rel. Davis v. Public Emps. Retirement Bd.*, 174 Ohio App.3d 135, 2007-Ohio-6594, ¶ 35 (10th Dist.). With issue preclusion or collateral estoppel, a party and those in privity with the party are prevented from relitigating the same facts or legal issues that were previously litigated and determined between the same parties. As this court said in *Davis*, " '[c]ollateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.' " *Id.* at ¶ 18, quoting *Thompson* at 183. In order for issue preclusion or collateral estoppel to apply, a "fact or a point" must have been "actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 201 (1983).

{¶ 19} Applying this law to the evidence in the record, we find as a matter of law that C.A. did not "actually litigate" the facts supporting her plea.  The trial court chose to believe that she pled guilty because she was offered a good deal, not because she actually was guilty.  There is nothing in the record to convince us that the trial court abused its discretion in believing her.  Unless C.A. "actually litigated" the factual basis for her guilty plea, she is not collaterally estopped from explaining at the postconviction hearing why she pled guilty.

{¶ 20} As Supreme Court of Ohio Justice Schneider has earlier posited in a dissent:

> Concededly, the proposition that a criminal conviction arising from a plea of guilty is conclusive for all purposes and for all times, i.e., res judicata of the facts necessarily encompassed therein, has a reasonable appeal. Although in this state we have historically followed the practice of admitting the fact of a prior guilty plea in a criminal case into evidence in a civil proceeding predicated upon the same acts which supported the conviction, we have never held, nor has it ever been claimed, that the conviction is res judicata as to the act in controversy in the civil proceeding. See *Clinger v. Duncan*, 166 Ohio St. 216, 141 N.E.2d 156; *Freas v. Sullivan*, 130 Ohio St. 486, 200 N.E. 639; *Clark v. Irvin*, 9 Ohio 131. *Unquestionably, one reason for this is that in many cases a plea of guilty may, in fact, amount to a compromise by the defendant to avoid an expensive or undesirable trial, or both.*

(Emphasis added.)  *State ex rel. Kendzia v. Carney*, 20 Ohio St.2d 37, 40-41 (1969) (Schneider, J. dissenting).

{¶ 21} We have previously  recognized that "the Ohio Supreme Court has held that 'an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action.' "  *Davis* at ¶ 31, quoting *Goodson* at 201.  " 'The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a "full and fair opportunity to litigate that issue in the first action." ' "  *Id.* at ¶ 18, quoting *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813 (8th Dist.1993), quoting *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74 (1977).  The trial court observed C.A.'s demeanor, listened to her testimony, and commented on its observations, finding her to be "extremely credible with

regard to when [she] last used, whether or not [she was] under the influence, why [she] did] what [she did]." (Tr. 41.) The trial court judge, consistent with his observations during the hearing, chose to believe C.A.'s assertion that she was not under the influence of heroin or marijuana at the time of the OVI (notwithstanding her prior plea to OVI) and accepted her explanation for why she pled guilty in the first place.

{¶ 22} In reviewing the trial court's conclusion, we find it was supported by C.A.'s testimony that she was not under the influence and pled guilty to OVI because of the benefits she received in return for her plea and the fact that the evidence against her was strong. The trial court would have been within its discretion to believe or disbelieve C.A.'s testimony at the hearing on sealing the records of her criminal convictions. It chose to believe it, and we shall not substitute our judgment for the judgment of the trial court. *See, e.g., Taylor Bldg. Corp.* at ¶ 38 (affording the factual findings of the trial court "great deference"); *Testa* at 165 (affording a trial court's judgments on credibility "the utmost deference"); *K.J.* at ¶ 18 (applying a hybrid standard of review to former R.C. 2953.61 and according deference to the factual findings of the trial court).

{¶ 23} Having accepted the trial court's factual conclusion that C.A. was not under the influence of heroin or marijuana at the time of the incident for which she pled to OVI, we must now determine whether the drug charges (for heroin, marijuana, and paraphernalia) were brought "as a result of or in connection with the same act" as the OVI. Former R.C. 2953.61. For this inquiry, applying factual conclusions to law, we use a de novo standard of review. *Id.*

{¶ 24} Our prior decision in *K.J.* is instructive here. In that case, K.J. had an OVI conviction and sought to expunge an open container offense and a marijuana possession offense. *Id.* at ¶ 4. K.J. had been discovered driving under the influence of alcohol with an open vodka bottle in the car and a small amount of marijuana. *Id.* at ¶ 5. The evidence confirmed that K.J. had been drinking and was over the legal limit for alcohol. *Id.* The evidence failed to show, however, that her OVI was caused by or connected to her marijuana possession other than that they both were discovered at the same time by the same officer during the same traffic stop. *Id.* at ¶ 19-20, 29. We held that those circumstances did not suffice to show that the OVI and the marijuana possession charges arose "as a result of or in connection with the same act." *Id.* at ¶ 27. We noted that a

related section, R.C. 2953.31(A), addresses the situation " '[w]hen two or more convictions result from or are connected with the same act *or result from offenses committed at the same time.*' "  (Emphasis sic.)  *Id.* at ¶ 22, quoting R.C. 2953.31(A).  R.C. 2953.31(A) on its face indicates that the legislature appreciates the difference between offenses arising from or connected with the same act and those that merely share similar timing.  *Id.* at ¶ 22-25.  The legislature chose to draft former R.C. 2953.61 to apply only to those offenses arising "as a result of or in connection with the same act."  On that basis, we held that the marijuana offense was expungeable even though the OVI was not.  *Id.* at ¶ 19-29.

{¶ 25}  The situation herein under review is similar.  The trial court believed C.A.'s testimony that she was not under the influence of heroin or marijuana (though she may have had some residual amount in her system) when she was pulled over.  The trial court accepted that C.A. pled guilty not because she was, in truth, guilty, but because she felt the benefits of her plea and the strength of the evidence against her warranted a guilty plea.  Respecting the trial court's decision to credit C.A.'s version of the facts, we cannot say that the OVI arose "as a result of or in connection with the same act" as the drug charges because, if C.A. is believed, there never was an OVI except on the paper of the plea.  Thus, the drug charges cannot have arisen "as a result of or in connection with the same act" as the OVI because there was no actual "act" of driving under the influence underlying the OVI plea.  Since the OVI conviction did not arise "as a result of or in connection with the same act" as the drug charges, former R.C. 2953.61 and R.C. 2953.32 do not operate to preclude C.A. from having her records of the drug charges, pursuant to R.C. 2953.52, sealed.

{¶ 26}  Appellants' first assignment of error is overruled.

### B. Second Assignment of Error – Whether the Trial Court's Order Requires Non-Sealable Records to be Sealed

{¶ 27}  Appellants point out that C.A.'s fingerprints and mug shot were only taken once in connection with both the drug charges and the OVI charge and plea.  Then they argue that these records were ordered sealed (as they relate to the drug charges) and yet are unsealable (as they also relate to the OVI).  Appellants assert that the government's interest in avoiding this confusion outweighs C.A.'s interest in moving on with her life and pursuing her ambition to become a kindergarten teacher.  Appellants urge us to find that

the trial court abused its discretion in allowing C.A. to seal records relating to case Nos. 2012 CRB 13537 and 2012 CRA 13538.

{¶ 28} R.C. 2953.52 provides that, "[a]ny person, who is found not guilty of an offense by a jury or a court or who is the defendant named in a dismissed complaint, indictment, or information, may apply to the court for an order to seal the person's official records in the case."  R.C. 2953.51(D) then defines "official records" as:

> [A]ll records that are possessed by any public office or agency that relate to a criminal case, including, but not limited to: the notation to the case in the criminal docket; all subpoenas issued in the case; all papers and documents filed by the defendant or the prosecutor in the case; all records of all testimony and evidence presented in all proceedings in the case; all court files, papers, documents, folders, entries, affidavits, or writs that pertain to the case; all computer, microfilm, microfiche, or microdot records, indices, or references to the case; all index references to the case; all fingerprints and photographs; all DNA specimens, DNA records, and DNA profiles; all records and investigative reports pertaining to the case that are possessed by any law enforcement officer or agency, except that any records or reports that are the specific investigatory work product of a law enforcement officer or agency are not and shall not be considered to be official records when they are in the possession of that officer or agency; and all investigative records and reports other than those possessed by a law enforcement officer or agency pertaining to the case. "Official records" does not include records or reports maintained pursuant to section 2151.421 of the Revised Code by a public children services agency or the department of job and family services.

{¶ 29} Appellants focus on the fact that the definition in R.C. 2953.51(D) includes "all fingerprints and photographs," arguing that the trial court's order requires records to be sealed that are not sealable because they relate both to the OVI and the drug charges. However, before listing all the various types of included records, the definition set forth in R.C. 2953.51(D) first directs itself to "all records that are possessed by any public office or agency that relate to *a* criminal case."  (Emphasis added.)  Moreover, R.C. 2953.52(B)(4) explains that a court's sealing order is aimed at "all official records pertaining to *the* case."  (Emphasis added.)  While R.C. 1.43(A) provides that, in interpreting the Ohio Revised Code, the singular includes the plural, we find that the legislature's unambiguous

language here suggests that the "official records" to be sealed are just those that relate to the individual case or cases being sealed. *See Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, ¶ 19 ("The first rule of statutory construction is to look at the statute's language to determine its meaning. If the statute conveys a clear, unequivocal, and definite meaning, interpretation comes to an end, and the statute must be applied according to its terms.").

{¶ 30} In this case, even though C.A.'s picture and fingerprints were only taken once, C.A. suggests, and we agree, that copies would, as a matter of course, have been included in each case file. That is, there were three distinct cases. Case No. 2012 TRC 146198 was the OVI case. *C.A.* at ¶ 5. Case No. 2012 CRA 13538 was the alleged heroin possession. *Id.* at ¶ 3. And, case No. 2012 CRB 13537 was the alleged possession of drug paraphernalia (smoking bowl and syringe) and the alleged possession of marijuana. *Id.* at ¶ 4. The fact that copies of C.A.'s fingerprints and picture reside in each case file does not mean that somehow all copies have to be deleted from all files, or even from the unsealed files, when two of the other cases are sealed.

{¶ 31} The Supreme Court has recognized that "[w]hen an applicant with multiple convictions under one case number moves to seal his or her criminal record in that case pursuant to R.C. 2953.32 and one of those convictions is exempt from sealing pursuant to R.C. 2953.36, the trial court may not seal the remaining convictions." *State v. Futrall*, 123 Ohio St.3d 498, 2009-Ohio-5590, syllabus. We have herein recognized that this holding applies to situations involving dismissed charges in a single case number with exempt convictions. *K.J.* at ¶ 31. However, neither we nor the Supreme Court have suggested that the mere fact that the same picture or set of fingerprints was used in multiple case files (one of which is exempt from expungement) suffices to render all those cases exempt. If this were the law, the state could forever render every case exempt from sealing by including a copy of a driver's license or some other public record in each case file and then claim that the sealing order improperly mandated sealing the "unsealable." The trial court's order was for the sealing of all records kept in connection with case Nos. 2012 CRA 13538 and 2012 CRB 13537. If an agency has custody of a copy of the fingerprints and mug shot in connection with case No. 2012 TRC 146198 it need not seal it.

{¶ 32} We do not find this to be confusing or troublesome. Even if this situation were somehow confusing, the confusion is of the government's own making and should not inure to the detriment of C.A. Accordingly, we agree with the trial court; appellants have not asserted a legitimate need to maintain the records of the dismissed case Nos. 2012 CRA 13538 and 2012 CRB 13537. Nor have appellants asserted an interest that would outweigh C.A.'s heavy interest in putting this behind her, getting on with her recovery, and living a life henceforth in which she can be a full and participating member of her community, contributing to its well-being. *See* R.C. 2953.52(B)(2)(d).

{¶ 33} Appellants' second assignment of error is overruled.

## IV. CONCLUSION

{¶ 34} Appellants' two assignments of error are overruled. The trial court acted within the fair exercise of its discretion (not abusing it) when it chose to believe that C.A. was not under the influence of heroin or marijuana at the time of the alleged OVI to which she pled guilty. When the trial court determined that the drug charges were not related to the OVI, its decision was supported under the law, and we find similarly no abuse of discretion. Moreover, allowing C.A. to seal records relating to case Nos. 2012 CRB 13537 and 2012 CRA 13538 does not require the sealing of identical records (such as fingerprints and mug shots) that are kept in connection the OVI in case No. 2012 TRC 146198 or any other non-sealed case, for that matter. We affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

HORTON, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 35} I respectfully dissent. I am not persuaded that the holding in *Clark v. Irvin*, 9 Ohio 131 (1839), applies in the sealing of records scenario.

{¶ 36} The court in *Clark* qualified its holding by noting: "The record in the original prosecution[,] *not being between the same parties*, can not be conclusive in the civil action, and the plea, considered by itself, only amounts to a confession, which can not have any higher effect than would the record which is founded upon it." (Emphasis added.) *Id.* at 132-33.

{¶ 37} A sealing of records case involves the same parties—the applicant/defendant and the state. The cases cited by the majority following *Clark* and in support of its conclusion are civil negligence cases or declaratory judgment actions involving a third party not present in the criminal case. The state is not involved. Furthermore, the elements of negligence differ from the elements of criminal and traffic offenses; whereas, in this case, the elements of the criminal traffic offense to which C.A. pled are the same elements C.A. now seeks to disprove in the sealing of records hearing. To permit this subsequent effort to disprove the elements ignores the General Assembly's treatment of convictions separately from dismissals, not guilty findings, and no bill verdicts in determining eligibility for sealing of records.

{¶ 38} For these reasons, I would reverse.

————————————————